**William GARRETT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20840.**

United States Court of Appeals
Ninth Circuit.

Sept. 26, 1967.

Luke McKissack, Los Angeles, Cal., for appellant.

Edwin L. Miller, Jr., U. S. Atty., Phillip Johnson, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and FERGUSON, District Judge.

DUNIWAY, Circuit Judge:

Garrett appeals from a judgment of conviction, following a jury's verdict, on both counts of a two-count indictment. Sentences were concurrent. We therefore consider only the first count, which charges a conspiracy to import marihuana from Mexico in violation of 21 U.S.C. § 176a.[1] The second count charg-

---

1. The first count reads:
    "Beginning at a date unknown to the Grand Jury and continuing to on or about March 4, 1965, within the jurisdiction of this Court, defendants WILLIAM JAMES GARRETT, BARBARA GARRETT, JOHN ARTHUR FORD and LARRY T. SHERMAN, and divers oth-

ed aiding and abetting importation of marihuana. We affirm.

Garrett was tried alone. A number of claims of error are made. They can best be considered in the light of the facts, which, stated most favorably to the government, are as follows: In October, 1964, John Arthur Ford went to Compostela, Mexico. Before he left, Garrett told him to keep his eyes open for anything available. In December, 1964, Ford wrote to Garrett, saying that he could get marihuana. In reply, Garrett wrote, in part:

> "The set-up and deal sounds great— have 300 on hand right now for three at 50, four at 40 and will have more by time you get here—at least another 2–300. Be sure to bring a bit of the pure raw ō as I must make this gas— at least $50 for me. * * * Buy a little fly to for our mad sex f(r)iends. Watch your partner—how does he cross over—if with you makes customs more a problem maybe? It makes you stand out of the herd as not many Yanks bring others back with them. Dig!

> "The prices you gave *must* be mine— if you're paying that much in Compostela—buy in tj, its cheaper! Guadalajara goes for 20–25 right?"

Garrett sent Ford a telegraph money order, and Ford bought, in Mexico, and delivered to Garrett, in California, a substantial quantity of marihuana. This occurred in January, 1965. All of this evidence came in over objection, and the court instructed the jury that they should consider it only as bearing on Garrett's intent.

In February, Garrett, Barbara Garrett and Ford met at Garrett's home in Santa Monica. Ford told Garrett he had a man who had marihuana for sale. Garrett said that he would sell the marihuana that he had just received from Ford, and that Ford could possibly return to Mexico, get more, and deliver it to Garrett. About a week later, Garrett, Ford, Sherman, and possibly Barbara, met at Garrett's home. Garrett said that as soon as he had sold the marihuana Ford had delivered, he could take care of more if Ford and Sherman could bring it from Mexico. He offered $50.00 per kilo. In mid-February there was another talk between Garrett, Ford and Barbara. Garrett gave Ford $100 as an advance for the purchase of marihuana in Mexico, and said that he could handle any that Ford could bring back.

About February 20, 1965, Ford and Sherman drove to Compostela, Mexico. They bought two large bags of marihuana, to be delivered to Garrett. They drove across the border at Tijuana on March 3 at about 6:30 P.M. They were stopped, the car was searched, and 26 pounds of marihuana was found. Sherman agreed to cooperate. Some of the marihuana was put in the trunk of the car, and Sherman and Agent Spohr drove it to Santa Monica. Sherman was equipped with a concealed radio transmitting and recording device, referred to in the record as a kel device, and went to Garrett's house. He arrived at about 3:00 A.M. on March 4. He found Garrett in the garage and told him "I have your grass." Garrett asked where Ford was and was told he was sick and had to go

---

er persons to the Grand Jury unknown, agreed, confederated, and conspired together to commit offenses against the United States, namely, knowingly and with intent to defraud the United States, to import and bring into the United States from Mexico, and to smuggle and clandestinely introduce into the United States from Mexico, marihuana, without presenting said marihuana for inspection and without entering and declaring said marihuana as required by United States Code, Title 19, Sections 1459, 1461, 1484 and 1485, and to conceal, and facili-

tate the concealment and transportation of marihuana which had been imported into the United States contrary to law, said agreement, confederation, and conspiracy being in violation of Title 21, United States Code, Section 176(a), and to effect the object of said conspiracy, the following overt act was committed:

1. On or about March 3, 1965, in San Diego County, within the Southern Division of the Southern District of California, defendant LARRY T. SHERMAN drove an automobile into the United States from Mexico."

to his house. Garrett said, "Where is the grass" and Sherman replied "It is outside in the car." Garrett refused to receive it at that hour, saying that "the only people on the street are black and white," meaning police. He told Sherman to return next morning. Sherman protested, and Garrett said: "You should complain. I have got to hang onto it for two days before I can get rid of it. Tell John I have already got ten kilos sold, and he will get his money in a couple of days. I have also made a connection, a big connection, in Hollywood who deals with the movie colony, but I am going slow with that one."

At 9 A.M., Sherman again appeared, carrying the same device. Garrett went to Ford's house, returned, and told Sherman that there was something wrong, that Ford had not slept at home. Sherman suggested that Ford had slept at his girl friend's house. He and Garrett went there and found no one at home. Garrett said: "You know I won't accept delivery without the principal man being there." No delivery was made.

A warrant for Garrett's arrest was obtained and he was arrested at his home. The home was searched. A small quantity of marihuana was found in a book under a mat and a partially smoked marihuana cigarette was found in a vase, both in the living room. About 2 oz. of marihuana was found in an oatmeal box on top of the refrigerator in the kitchen. These bits of marihuana were received in evidence, over objection.

Garrett took the stand and denied having any arrangement with Ford or Sherman to bring in marihuana. He admitted giving Ford money, but said it was to buy pre-Columbian statuary and some animals, and that he refused to receive them at 3 A.M.

1. *The marihuana found in Garrett's home was admissible.*

■ Garrett urges that the marihuana found in his home was the product of an unlawful search and seizure. There seems to have been a motion to suppress, but the record of that proceeding has not been brought before us. We do not presume error. It must be shown by the record. So far as appears on the record that we do have, the search was incident to the arrest, and was a bona fide search for contraband. As such, it did not violate the Fourth Amendment. Harris v. United States, 1947, 331 U.S. 145, 151–154, 67 S.Ct. 1098, 91 L.Ed. 1399; Ker v. State of California, 1963, 374 U.S. 23, 41–42, 83 S.Ct. 1623, 10 L.Ed.2d 726; Argo v. United States, 9 Cir., 1967, 378 F.2d 301, 302.

■ It is argued, however, that the officers had no basis for searching for marihuana because they had intercepted it at the border and knew that Garrett had not received it. Assuming, but by no means deciding, that such an argument might have validity in another case, it has none here; it is based on too narrow a view of the evidence. The officers had reason to believe that Garrett was dealing in the drug, and could therefore search for other marihuana than that which they had intercepted.

This case differs from Diaz-Rosendo v. United States, 9 Cir., 1966, 364 F.2d 941, on which heavy reliance is placed by Garrett. Here, there was considerable evidence of a prior importation, procured in part by Garrett, a part of the conspiracy charged, and the presence of some marihuana in his home is corroborative, to some extent, of that evidence. That was not the situation in the *Diaz-Rosendo* case. There, no evidence of any prior association between him and the importing party was offered, much less any evidence of a prior association in importing marihuana.

2. *Evidence of Garrett's statements, heard by the officers from the device carried by Sherman, was properly received.*

■ The use of the device did not violate the Fourth Amendment. On Lee v. United States, 1952, 343 U.S. 747, 750–754, 72 S.Ct. 967, 96 L.Ed. 1270 is squarely in point, as are Todisco v. United States, 9 Cir., 1962, 298 F.2d 208, 209–210; Carbo v. United States, 9 Cir., 1963,

314 F.2d 718, 738, and Battaglia v. United States, 9 Cir., 1965, 349 F.2d 556, 559. See also Osborn v. United States, 1966, 385 U.S. 323, 326–337, 87 S.Ct. 429, 17 L.Ed.2d 394; Lopez v. United States, 1963, 373 U.S. 427, 437–439, 83 S.Ct. 1381, 10 L.Ed.2d 462; Benson v. People of the State of California, 9 Cir., 1964, 336 F.2d 791, 794–797.

In reliance on the dissents in *On Lee*, supra, in *Lopez*, supra, and the concurrence in Warden Md. Penitentiary v. Hayden, 1967, 387 U.S. 294, 310–312, 87 S.Ct. 1642, 18 L.Ed.2d 782, and similar "nose counting," counsel asks us to say that *On Lee* is no longer law. The Supreme Court, however, has not so held, and we decline to anticipate that it might. We think that, for the reasons stated by us in *Todisco*, *On Lee* was correctly decided.

There was no violation of the Fifth Amendment privilege against self-incrimination. As we said in *Todisco*, supra, 298 F.2d at 212:

"But the appellant was not confessing to a crime. He was committing one. Even if there were self-incrimination, it was wholly voluntary. There is obviously no merit to this contention."

There was no violation of the right to counsel, as guaranteed by the Sixth Amendment. "One is not entitled to counsel while committing his crime. * * *" Grier v. United States, 9 Cir., 1965, 345 F.2d 523, 524; Battaglia v. United States, supra, 349 F.2d at 559.

*3. The claim that Rule 5(c) F.R.Crim. P. was violated is not supported by the record.*

■ Garrett asserts that he appeared before the District Court in Los Angeles on March 16, 1965, for a preliminary hearing, but that the hearing was cancelled and he was ordered transferred to San Diego. He says that he remained in jail in Los Angeles, with no preliminary hearing, until March 27, when he was taken to San Diego, and that he was there indicted on March 31, and was finally arraigned on April 6, over his objection.

These recitals are taken from Garrett's brief. They are not supported by any references to the record, although such references are required by Rule 18, paragraph 2(c) of our rules, and although counsel has certified, as required by our Rule 18, paragraph 2(g), that he has read the rule and that the brief complies with it. Our own examination of the record does not reveal any support for the claims now made. They must therefore be rejected.

*4. The court did not err in its comments to the jury.*

■ Garrett now objects, although he did not object during the trial (Rule 30, F.R.Crim.P.), to the following comment by the trial court in its instructions to the jury:

"Really, again to comment as to the case, the question is who do you believe? There is a dispute between Garrett on the one side and Ford, Sherman, Spohr, the Customs agent, and Freeman, the federal narcotics agent on the other, and really the case is largely to be determined by who you believe. What witnesses do you believe?"

The principal ground of objection is that the court failed to mention defense witness Haag, who testified that Garrett was a collector of art objects. This, however, was collateral to the main issue. The jury could well have accepted Garrett's claim to be a collector of art objects and still have convicted him of conspiring to import marihuana. That was the issue to which the court was directing the jury's attention. The comment was not error.

*5. Evidence as to the December-January importation was properly received.*

■ Garrett relies upon the well established rule that evidence of prior offenses, not charged in the indictment, is not admissible. Here, however, the indictment charges a conspiracy, "[b]eginning at a date unknown to the Grand Jury and continuing to on or about March 4, 1965." The evidence attacked directly supports that allegation. The court's

limiting instruction, that the evidence could be considered only as to Garrett's intent, was more favorable to Garrett, as applied to count 1, than the law requires.

Affirmed.