**UNITED STATES of America, Appellee,**

**v.**

**Phillip Andrew SCOTT, Appellant.**

**No. 23119.**

United States Court of Appeals, Ninth Circuit.

March 6, 1970.

Joel W. H. Kleinberg (argued), Los Angeles, Cal., for appellant.

David Fox (argued), Asst. U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, CARTER, HUFSTEDLER, WRIGHT, KILKENNY and TRASK, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Appellant Scott appeals from his conviction for a violation of 21 U.S.C. § 176a.[1] Scott, along with two codefend-

1. Section 176a provides, in pertinent part: "[W]hoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States

ants, was indicted on January 31, 1968, upon a charge that on October 26, 1967, he and his codefendants had "knowingly received, concealed and facilitated the transportation and concealment" of marihuana that they knew "theretofore had been imported and brought into the United States contrary to law." A jury found that appellant and his codefendant Walker were guilty as charged; a mistrial was declared as to codefendant Rico.

Scott contends that: (1) the inclusion in the instructions to the jury of the presumption from section 176a, held unconstitutional in part in Leary v. United States (1969) 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, compels reversal of his conviction; and (2) section 176a is unconstitutional because it is an indirect enforcement of the Marihuana Tax Act, 26 U.S.C. § 4741 *et seq.*, held unconstitutional as applied in *Leary.* We uphold his first contention and reject his second contention. We sustain the constitutionality of section 176a (other than the presumption) as applied to Scott. We consider his contentions seriatim.

In *Leary*, the Supreme Court held unconstitutional that part of section 176a permitting the jury to presume or to infer that the defendant knew that marihuana had been illegally imported from proof that he had been in possession of marihuana, because there was no "substantial assurance that one in possession of marihuana is more likely than not to know that his marihuana was illegally imported." (395 U.S. at 46, 89 S.Ct. at 1553) Under such circumstances there is no "rational connection between the facts proved and the fact presumed," and the statutory presumption pro tanto fails the constitutional test of Tot v. United States (1943) 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519.

Before we reach the merits of Scott's presumption argument, we dispose of three preliminary questions: (1) Did Scott's failure to except to the instruction embodying the presumption foreclose him from here claiming error in the instruction? (2) Did Scott's failure to raise the same question upon a motion for acquittal or upon motion for a new trial foreclose him from raising it on appeal? (3) Is the *Leary* ruling on the unconstitutionality of the presumption retroactive?

The general rule is that a claim of error in a jury instruction is waived, unless the defendant excepts to the instruction before the jury retires to consider its verdict. (Fed.Rules Crim. Proc. 30; Lopez v. United States (1963) 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462.) The purposes of the rule are to enable the district court to correct a defect, if any, in the instruction and to prevent a defendant from hedging the risk of an adverse verdict by inviting error. (8A J. Moore, Federal Practice ¶ 51.02 (2d Ed. 1968).) At the time of Scott's trial, there was a solid wall of circuit court authority, including our own, sustaining the presumption against constitutional attack. (*E. g.*, Caudillo v. United States (9th Cir. 1958) 253 F.2d 513, cert. denied *sub nom.* Romero v. United States (1958) 357 U.S. 931, 78 S.Ct. 1375, 2 L.Ed.2d 1373; Costello v. United States (9th Cir. 1963) 324 F.2d 260, 263–264, cert. denied (1964) 376 U.S. 930, 84 S.Ct. 699, 11 L.Ed.2d 650.) An exception would not have produced any results in the trial court. Under these circumstances were we to insist that an exception be taken to save the

marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years * * *.

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

point for appeal, the unhappy result would be that we would encourage defense counsel to burden district courts with repeated assaults on then settled principles out of hope that those principles will be later overturned, or out of fear that failure to object might subject counsel to a later charge of incompetency. We conclude that Scott's failure to except did not waive the point on appeal.[2] (Kohatsu v. United States (9th Cir. 1965) 351 F.2d 898, 901 n. 4, cert. denied (1966) 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017; United States v. Lopez (2d Cir. 1969) 414 F.2d 272; Fed. Rules Crim.Proc. 52(b); *cf.* United States ex rel. West v. LaVallee (2d Cir. 1964) 335 F.2d 230.)

On a parity of reasoning we conclude that Scott did not lose his point by neglecting to raise it by motion. The point would have been no more salable cast as a motion than it would have been as an exception. Moreover, we must be just as hesitant to dismiss a constitutional question for a failure to observe a formality that did not affect the course of trial as we are to seize upon a trivial error, formally preserved, to overturn a conviction.

Upon this court's direction, the parties filed supplemental briefs upon the question whether or not the *Leary* decision, invalidating part of the section 176a presumption, applies to cases then pending on direct appeal.[3]

██ The extent to which a "new" constitutional rule affecting criminal trials will be given restrospective application is determined by measuring the rule against three criteria: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (3) the effect on the administration of justice of a retroactive application of the new standards." (Stovall v. Denno (1967) 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199.) "Foremost among these factors is the purpose to be served by the new constitutional rule." (Desist v. United States (1969) 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248.) Heavy weight should be given the last two factors—the extent of reliance and consequent burden on the administration of justice—"only when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity." (Desist v. United States, *supra,* 394 U.S. at 251, 89 S.Ct. at 1035.) Accordingly, where the rule is fashioned to correct a serious flaw in the fact-finding process and therefore goes to the basic integrity and accuracy of the guilt-innocence determination, retroactive effect will be accorded. (*E. g.,* McConnell v. Rhay (1968) 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2; Roberts v. Russell (1968) 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100; Witherspoon v. Illinois (1968) 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776; Jackson v. Denno (1964) 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Griffin v. Illinois (1956) 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; see Linkletter v. Walker (1965) 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, 639.) Retroactivity has been denied or limited only in instances where the rule does not go to the fairness of the trial, or where the flaw in the fact-finding process is either of secondary importance or of infrequent occurrence. (*E. g.,* Desist v. United States, *supra*; Stovall v. Denno, *supra*; Tehan v. United States ex rel. Shott (1966) 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453; Johnson v. New Jersey

2. Leary did not except to the instruction he later challenged successfully, but he did raise the point in his motion for a new trial. Leary v. United States, *supra,* 395 U.S. at 32, 89 S.Ct. 1532.

3. Scott's opening brief relied heavily upon counsel's prediction of the outcome of *Leary* which at that time was pending and undecided by the Supreme Court. *Leary* had not been decided when the briefing was first concluded, but the opinion was handed down shortly before the case was first argued to the panel.

(1966) 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; Linkletter v. Walker, *supra*; Williams v. United States (9th Cir. 1969) 418 F.2d 159.).

The invalidated portion of the presumption was an integral part of the fact-finding process. The use of the presumption affected the integrity of the determination of guilt, and its use was neither secondary in importance nor infrequent in occurrence. The Government's use of the presumption permitted it to bypass proof of substantive elements of the offense, thus creating a "serious risk that the issue of guilt or innocence may not have been reliably determined." (Roberts v. Russell, *supra*, 392 U.S. at 295, 88 S.Ct. at 1922.) The intimacy of the connection between the use of the presumption and the finding of guilt is dramatically evident in a case in which the Government relied upon the presumption alone to prove knowledge of illegal importation. But the presumption is no less inextricably bound to the finding of guilt when it is added to independent evidence of knowledge and the jury is permitted to decide guilt either upon the presumption, or upon the independent evidence, or both.

Neither the fact that there has been substantial reliance on the validity of the presumption nor the fact that retrospective application of *Leary* may affect numerous cases justifies limiting its retroactive application. The premise of *Leary* is that the presumption is, in part, factually unsupportable. It follows that of those convicted of violating section 176a by the use of the presumption, many are innocent of that crime. There is no legitimate interest in refusing relief to those who were not proved guilty, whether that relief is sought by direct or by collateral attack. When the integrity of the fact-finding process is at stake, it is of no consequence that an examination of that process is inconvenient, or that many, rather than a few, convicted persons have been subjected to that process.

We conclude that the decision in *Leary* partially invalidating the presumption is fully retroactive.

Because Scott's case was submitted to the jury on alternative theories, one of which was the constitutionally invalid presumption, the conviction must be set aside,[4] unless the giving of the instruction under the circumstances of this case was harmless beyond a reasonable doubt. (Harrington v. California (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705.)

The evidence, independent of the presumption, tending to prove that the marihuana had been imported from Mexico and that Scott knew about its illegal importation was as follows: On the evening of October 26, 1967, a federal narcotics agent, Gordon, met Scott's codefendant Walker to complete a prearranged sale of marihuana to Gordon. The two men went to Scott's apartment to pick up the marihuana. Scott admitted them into his apartment. According to Gordon's testimony, Walker asked Scott if the marihuana was there, and Scott replied that it was on its way and that he anticipated delivery in about 20 minutes. Then, said Gordon:

> "Mr. Scott stated that if he could rent one more apartment on the ground floor, that this would give him privacy for loading and unloading cars. He stated that he had sold used lumber to one of the biggest used lumber dealers in Mexico, and that this person had told him that he could have anything he wanted. That he would send him a hundred a week.

4. "It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside. See, e. g., Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)." Leary v. United States, *supra*, 395 U.S. at 31–32, 89 S.Ct. at 1545.

"I then stated that that's not very much stuff, and Mr. Scott said 'That's on consignment.' * * *"

Gordon also testified that Scott had told him that Scott had a source of supply in Mexico for 100 kilos a week.

Shortly after those conversations, Gordon said, Walker and Scott left him alone. He heard some bumping, "like somebody bringing something heavy up the steps." Gordon went into a side bedroom and saw Walker and codefendant Rico standing by a bed on which were some kilo bricks of marihuana. A few minutes later Scott entered the room carrying a trunk. Scott opened the trunk and Walker, Rico, and Scott unloaded 50 packages of marihuana from it.

Rico and Scott each denied any complicity in the transaction. Rico blamed Scott, and Scott blamed Rico. Each denied that he knew that the substance in the packages was marihuana. Scott denied having the quoted conversations with Gordon.

An expert witness for the Government, who had examined the marihuana taken from the trunk, testified that in his opinion the marihuana came from Mexico. His opinion was based on the nature of the packaging, the size of the bricks, and the unmanicured condition of the marihuana.

The evidence of Scott's knowledge of illegal importation was not overwhelming. Primarily the Government's proof rested on Gordon's testimony that Scott had told him that he had a Mexican source. Scott flatly contradicted Gordon. The question was thus one of credibility. Did the jury reach that credibility question after it had been effectively told that it need not do so? Would the jury have decided that Scott was lying when he denied those conversations, if it had never heard the presumption? No sure answers to those questions can be found in the record. We therefore cannot conclude that the error was harmless beyond a reasonable doubt. (*Compare* Bollenbach v. United States (1946) 326 U.S. 607, 614–615, 66 S.Ct. 402, 90 L.Ed. 350; Note, "Harmless Constitutional Error" (1967) 20 Stan.L.Rev. 83, 89.)

That conclusion compels a reversal of Scott's conviction. We must nevertheless reach Scott's second constitutional contention, because the question must be resolved before retrial.

Scott contends that section 176a is unconstitutional because it violates his Fifth Amendment privilege against self-incrimination. He reasons that none of the acts with which he was charged—receiving, concealing, and transporting marihuana—is a crime unless the marihuana was imported "contrary to law," that the only law to which importation can be "contrary" is the Marihuana Tax Act, held unconstitutional *Leary,* and that section 176a is thus an indirect enforcement against him of the Marihuana Tax Act. We reject each of his contentions.

The words "contrary to law" mean "contrary to any existing, applicable law." (Callahan v. United States (1932) 285 U.S. 515, 517, 52 S.Ct. 454, 455, 76 L.Ed. 914; Olais-Castro v. United States (9th Cir. 1969) 416 F.2d 1155, 1158 n. 8.) In the context of section 176a, the reference is to any existing law of the United States regulating the importation of merchandise, including marihuana,[5] for violation of which a penalty is imposed. Those existing laws include the Marihuana Tax Act, the Customs Inspection statutes, 19 U.S.C. §§ 1461 and 1462, and the provisions of section 176a itself relating to smuggling or clandestinely introducing marihuana. (*See* 1956 U.S. Code Cong. & Adm.News, pp. 3276, 3279.) Nothing in *Leary* or United States v. Covington (1969) 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94, or their predecessors, Marchetti v. United States (1968) 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States (1968) 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906; Haynes v. United States

5. We express no opinion on the question whether drugs other than marihuana are "merchandise."

(1968) 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923, suggests that the assertion of the privilege against self-incrimination would be a defense to a prosecution for smuggling or a defense to a prosecution for violating the general customs laws.

Moreover, nothing in *Leary* or its antecedents provides sustenance for Scott's claim that he cannot be prosecuted for receiving, concealing, or transporting marihuana that had been imported in violation of the Marihuana Tax Act. Neither *Leary* nor *Covington* held that the Marihuana Tax Act was unconstitutional on its face. Both cases held that the Act could not be constitutionally applied to a defendant, charged with violating the Act, who has made a timely assertion of his privilege against self-incrimination and who has not waived the privilege. (*See also* Minor v. United States (1969) 396 U.S. 87, 90 S.Ct. 284, 24 L. Ed.2d 283.)

The privilege is purely personal. No one can successfully assert as a defense to his prosecution the violation of another's privilege against self-incrimination. (Rogers v. United States (1951) 340 U. S. 367, 71 S.Ct. 438, 95 L.Ed. 344; Howard v. United States (9th Cir. 1968) 397 F.2d 72, 74; *cf.* Murray v. United States (9th Cir. 1968) 403 F.2d 694, 697.)

Section 176a did not require Scott to register or to pay any tax. His prosecution did not in any way depend upon a successful prosecution of the person or persons who imported the marihuana in violation of the Marihuana Tax Act, or any other law. (*Cf.* Marshall v. United States (9th Cir. 1969) 409 F.2d 925.) His attack on the constitutionality of section 176a is therefore unfounded.

Scott's remaining two contentions require no discussion. Both of them relate to matters that will not recur on retrial.[6]

The judgment is reversed.

KILKENNY, Circuit Judge (concurring and dissenting).

I concur in the majority opinion only to the extent that 21 U.S.C. § 176a, aside from the presumption, is not constitutionally invalid. Otherwise, I join in what has been written by Judge Trask, and joined by Judge Carter.

Moreover, I would add another ground for affirmance. Implicit in *Leary,* as I analyze that case, is a clear cut indication that the result would have been different had it not been for the fact that a valid objection had been taken in the trial court. I quote from the opinion:

> "It is true that petitioner did not object to the jury instructions on the basis of the presumption's alleged unconstitutionality. *However, he did rely upon that ground in his previous motion for a directed verdict at the close of the prosecution's case, and urged it again in his subsequent motion for a new trial. Both motions were denied.* * * * *In these circumstances, we conclude that the question is properly before us.* * * *" 395 U.S. p. 32, 89 S.Ct. p. 1546 (Emphasis supplied.)

Here, as distinguished from *Leary,* the appellant failed to note an objection or exception of any kind to the presumption instruction, or otherwise challenge the validity of the statutory presumption. Rule 52(b), F.R.Crim.P., permits, but does not require, the Court of Appeals to recognize plain error. A discretion is lodged in the appellate court. On Lee v. United States, 343 U.S. 747, 749–750 n. 3, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). Although the substantive law enunciated in *On Lee* has been under attack in recent years, its legal principles have thus far withstood the onslaught. Garrett v. United States, 382 F.2d 768, 772 (9th Cir. 1967); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). Moreover, *On Lee's* construction of Rule 52(b) has not

6. The contentions concerned claimed error in seating a juror initially excused for cause and claimed error in defining "concealment" to the jury by the inclusion of reference to the Marihuana Tax Act.

been overruled or eroded. United States v. Miller, 316 F.2d 81 (6th Cir. 1963), cert. denied 375 U.S. 935, 84 S.Ct. 335, 11 L.Ed.2d 267, rehearing denied 375 U.S. 989, 84 S.Ct. 520, 11 L.Ed.2d 476. Worthy v. United States, 409 F.2d 1105, 1110 (D.C. Cir. 1968); United States v. Dolleris, 408 F.2d 918, 920 (6th Cir. 1969), cert. denied 395 U.S. 943, 89 S. Ct. 2014, 23 L.Ed.2d 461; Alexander v. United States, 390 F.2d 101, 103 (5th Cir. 1968). Rule 52(b) should be used only in unusual and extraordinary situations to prevent a miscarriage of justice or to preserve the integrity of the judicial proceedings. Herzog v. United States, 235 F.2d 664, 666 (9th Cir. 1956), cert. denied 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59; Reisman v. United States, 409 F.2d 789, 791 (9th Cir. 1969).

The majority recognizes the rule that a claim of error is waived, unless a proper objection is taken in the trial court. Rule 30, F.R.Crim.P. Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). The rule, it is argued, should not be employed in this case for the reason that the appellant was faced with a "solid wall" * of authority in this and other circuits sustaining the validity of the presumption. The answer to this argument is that, in fact, a proper objection was made in *Leary*. Logically, it seems to me, the "solid wall" argument should be used in favor of the Government, rather than appellant. A great many marihuana cases are now on appeal from the Southern and Central Districts of California, the District of Arizona and other Districts in the Circuit. No doubt, the presumption instruction was used in a large number of those cases. I venture a fairly educated guess that challenges to the presumption instruction, in the trial courts, would be on the minimal side. On the record before us, where the appellant's guilt is evident, we should exercise our discretion against the employment of Rule 52(b).

Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), cert. denied, 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966); United States v. Lopez, 414 F.2d 272 (2d Cir. 1969), and United States ex rel. West v. LaVallee, 335 F.2d 230 (2d Cir. 1964), cited by the majority, are not to the contrary. Implicit in each of those cases is the well established dogma that the appellate court *may* recognize plain error in the trial court. Those decisions are totally devoid of language which would indicate it would be an abuse of our discretion to refuse to apply the plain error rule on a record such as here presented. This is not a case such as Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), where the trial court failed to submit to the jury the essential elements of the only offense on which a conviction could rest. Clearly, it would be an abuse of discretion not to employ Rule 52(b) in that factual atmosphere.

I would affirm.

TRASK, Circuit Judge, with whom Chief Judge CHAMBERS and Circuit Judges KOELSCH, CARTER and KILKENNY join (dissenting).

I am of the view that, under the circumstances of this case, the *Leary* error found by the majority here was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

An examination of the Reporter's Transcript of the evidence (R.T.) has persuaded me to this conclusion. That

* I am not sure that the wall is as stout as the majority would have us believe. It seems to me that Judges Jertberg, Barnes and Koelsch, in Erwing v. United States, 323 F.2d 674 (9th Cir. 1963), a cocaine case, rather clearly forecast the result in *Leary*. Less than three weeks after *Erwing*, Judge Duniway, joined by Judges Orr and Hamley, in Costello v. United States, 324 F.2d 260 (9th Cir. 1963), a marihuana case cited by the majority, refused to pass on the constitutionality of the § 176a presumption on the record before them. Without question, the constitutionality of the section, as applied to marihuana, was left open in *Costello*.

evidence has forcefully influenced me to the view that neither the reading of the presumption nor its limited discussion before the jury could have had any probable impact on the minds of the jurors nor any effect upon their decision. The plain hard facts developed by the government in presenting its case and the absence of any real convincing evidence to the contrary combine to render the effect of the presumption insignificant in this instance.

The amount of marihuana to be delivered under the scheme in which Scott was a principal participant, was 50 kilos or approximately 110 pounds. There was positive testimony that anyone dealing with such a large amount would know where it came from (R.T. p. 385). A narcotics expert testified that it came from Mexico. (R.T. p. 383). It was wrapped in a butcher paper characteristic of Mexican import. The shape of the marihuana bricks and the rough quality of the product itself identified it as of Mexican origin as well as its amount measured in "kilos" rather than "pounds".

The transaction was to be completed in Scott's apartment in Los Angeles. He met Gordon, the undercover agent, and Walker, a co-defendant, at the door and took them into a back bedroom of his apartment. Other agents observed Scott's car being driven to the door by Rico, another co-defendant. Rico and Scott were observed as they unloaded the blue trunk or suitcase from the back of the car and carried it into the house. It was the same trunk or suitcase which Scott moments later brought into the back bedroom where agent Joseph Gordon waited to make the purchase. Scott opened the trunk and helped lay out the bricks of marihuana on the bed where they could be counted. Scott's co-defendant Rico corroborated the testimony of the government's agents on many of these facts. (R.T. p. 182–184) The government agent, Gordon, also related a statement made by Scott indicating that Scott had a source of supply of marihuana in Mexico for 100 kilos a week. (R. T. p. 82)

After the bricks of marihuana had been counted Rico testified he heard Scott ask, "Where is the money?" (R. T. p. 186) Agent Gordon testified that Scott had said, "Give him the money", referring to Rico. (R.T. p. 53) In any event there was a demand for money from Gordon in payment. At this time Gordon placed all of the participants under arrest.

Scott took the stand and testified that he believed the trunk or suitcase contained old clothes belonging to Rico. Rico testified he believed the suitcase contained tools belonging to Scott, (R.T. p. 197) but recognized that it was marihuana when the bricks were laid out. (R.T. p. 197).

The Supreme Court said in *Harrington, supra,* "Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of [the error] on the minds of an average jury." 395 U. S. at 254, 89 S.Ct. at 1728. In light of the above evidence, I believe that the presumption had little or no "probable impact" on this jury, and its recitation and reference was harmless beyond a reasonable doubt. I therefore would affirm the conviction.

I concur in the majority opinion as to its holding that 21 U.S.C. § 176a, absent the presumption, is not constitutionally infirm.

21 U.S.C. § 176a is clearly a custom law, and is not dependent on the marihuana tax statute for its operation. An inspection of the language in 21 U.S.C. § 176a as compared with 18 U.S.C. § 545, the general smuggling statute, shows almost identical language was used in the enactment of § 176a, the later of the two statutes. The legislative history, U.S. Code Congressional and Administrative News 1956, Vol. 2 page 3276 et seq., shows the intent of Congress that the smuggling of marihuana would be made a specific offense "so that it would no

longer be necessary to rely on the special smuggling laws of the United States in prosecuting cases involving smuggling of marihuana. * * *" [page 3276]. "Smuggling of marihuana could henceforth be prosecuted as a violation of this subsection and not as a violation of any of the provisions of the general smuggling statute (18 U.S.C. § 545) [page 3279]."

Witt v. United States, 413 F.2d 303 (9th Cir. 1969), cert. denied, 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230 (1969), clearly supports this portion of the majority opinion.

In view of the serious potential consequences of the majority opinion as to persons heretofore convicted, I comment on the problem of retroactivity. The majority opinion would give full retroactivity to the *Leary* opinion, i. e., it would be applied not only to cases on direct appeal but to all convictions resulting from a trial in which the presumption was used.

I am of the opinion that *Leary* should have generally prospective application and apply to those cases where trial commenced after the date of *Leary*, May 19, 1969. Such a holding would make *Leary* unavailable to defendants whose cases were previously tried and specifically to Scott whose trial ended February 14, 1968. Since the holding would affect Scott, it would not be dicta.

In the last five years the Supreme Court has handed down over a dozen decisions governing the retroactivity of its major criminal rights decisions. From the language and result of those decisions we must determine the retroactivity to be accorded *Leary*.

We begin our examination with the premise that the Constitution does not dictate our action. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), Justice Clark observed: "[W]e believed that the Constitution neither prohibits nor requires retrospective effect." [page 629, 85 S.Ct. at 1737]. To the same effect Johnson v. New Jersey, 384 U.S. 719 at 733, 86 S. Ct. at 1781 (1966), held "* * * [T]here are no jurisprudential or constitutional obstacles to the rule" of prospective application. *See also* Desist v. United States, 394 U.S. 244 at 252, 89 S.Ct. 1030 (1969).

Considered treatment of the retroactivity problem began with Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[1] Linkletter had been convicted in a state case in 1959 and proceeded below by habeas corpus. His was a collateral attack based on Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In *Linkletter*, the *Mapp* search and seizure decision was held not to apply to convictions which had become final before the date of *Mapp* and to apply only to those cases on direct review on the date of the *Mapp* decision. "It was the judgment of this Court that changed the rule and the date of that opinion is the crucial date." [page 639, 85 S.Ct. page 1743]. Linkletter himself was denied relief.

A similar result was reached in Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453

1. Prior to the *Linkletter* decision, the Court had, without comment, granted retroactivity in a number of criminal rights decisions. Eskridge v. Washington State Prison Bd., 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) (giving retroactivity to Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)); Reck v. Patè, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961) (giving retroactivity to Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936)) and Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944); Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964) (giving retroactivity to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); McNerlin v. Denno, 378 U.S. 575, 84 S.Ct. 1933, 12 L.Ed.2d 1041 (1964) (giving retroactivity to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)); Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964) (giving retroactivity to Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)).

(1965). Tehan had been convicted in state court in 1961 and brought habeas corpus in the district court. His was a collateral attack based on Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The court held as in *Linkletter* that the new rule applied only to cases on direct review at the date of *Griffin*. Tehan was denied relief but the case remanded for consideration of other matters not passed on below.

Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) was a collateral attack by a state prisoner on a conviction final in 1960. That case dispensed with the direct review-collateral attack distinction in applying the *Escobedo*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), rules only to trials beginning after the dates of the standard-changing decisions. Johnson himself was denied relief.

Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967), was also a collateral attack on a state conviction by way of habeas corpus. Reliance was on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). *Wade* and *Gilbert* were held to apply only to cases where the identification problem arose after June 12, 1967, the date of *Stovall*. Stovall was denied relief.

Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), arose on certiorari to the Supreme Court of Alaska. Reliance was on Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), holding that evidence violative of § 605 of the Federal Communications Act was not admissible in state criminal trials. *Lee* was given prospective application and *Fuller* was denied relief.

Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), arose on certiorari to the Second Circuit, which had affirmed a conviction in the district court. Reliance was on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *Katz* was held to affect only the fruits of electronic surveillance conducted after December 18, 1967, the date of *Katz*. Desist was denied relief.

Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), arose on certiorari to the Supreme Court of Delaware. It reapplied the reasoning of Johnson v. New Jersey, to retrials where the *Miranda* issue was involved and held that *Miranda* did not apply to any retrial of a defendant whose first trial commenced prior to June 13, 1966, the date of *Miranda*. Jenkins was denied relief.

De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), arose on certiorari to the Seventh Circuit. Reliance was on Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and Bloom v. Illinois, 391 U. S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), concerning rights to jury trials. The court held that the above decisions did not apply retroactively to trials begun before May 20, 1968, the date of *Duncan* and *Bloom*. De Stefano was denied relief.

Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), arose on certiorari to the First Circuit. Reliance was on McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), a non-constitutional case, holding that a guilty plea, accepted in violation of Fed.R.Crim.P. 11, must be set aside. The court held that *McCarthy* was to be applied prospectively from April 2, 1969, the date of *McCarthy*. Halliday was denied relief.

Thus, in a variety of cases, nine in all, some involving collateral attacks by habeas corpus and some arising on certiorari to circuit courts or state Supreme courts, none was made completely retroactive. Two were applied to cases on direct appeal and the others made completely prospective from the date of the opinion relied on. In each case the petitioner was denied relief and did not get the benefit of the rule changing decision.

Usually only the litigant in the original case changing the rule of law received the legacy of the new decision. In *Linkletter* and *Tehan,* litigants whose cases were pending on direct review also benefited. These facts should answer any contention as to the supposed unfairness to other litigants who have pending in our court cases presenting the question of the retroactivity of *Leary.*

The reasoning in the nine cases varied. In *Linkletter,* because the Court had earlier reversed convictions on direct appeal for *Mapp* violations without considering the possibility of non-retroactivity, the court was faced with a choice between full retroactivity and limited retroactivity. Justice Clark observed "* * * we believe that the Constitution neither prohibits nor requires retrospective effect." In deciding retroactivity, Justice Clark observed, "[w]e must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." [381 U.S. page 629, 85 S.Ct. page 1738].

Justice Clark held the purpose of the *Mapp* rule was to stop police misconduct and protect the privacy of persons' homes. Since the misconduct and the invasion of privacy had occurred, it could not now be corrected. Further what was involved was an "extraordinary procedural weapon that has no bearing on guilt." [367 U.S. pages 637–638, 85 S.Ct. page 1741]. On the demerit side of unlimited retroactivity, the Justice noted the long reliance by law enforcement officers on the old *Wolf* rule and the major burden involved in retrying freed defendants.

In *Tehan,* Justice Stewart refused to apply the *Griffin* rule (forbidding prosecutorial comment on a defendant's refusal to testify) to cases other than those on direct review at the time of the *Griffin* decision. As in *Linkletter,* all factors opposed full retroactivity. "First, the basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system * * *." [382 U.S. page 415, 86 S.Ct. page 464]. Self-incrimination protection was "not an adjunct to the ascertainment of truth." This contrasted with the fully retroactive *Gideon* case in which denial of a lawyer would "infect a criminal proceeding with the clear danger of convicting the innocent." [page 416, 86 S.Ct. page 465]. Reliance on the 1908 standard in Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L. Ed. 97, was substantial. Finally full retroactivity would have a "devastating" effect on the administration of criminal justice as literally thousands of cases would be open to challenge in the limited number of states allowing prosecutorial comment prior to *Tehan.*

In *Johnson,* the balancing of factors opposed full retroactivity. Reliance on past precedent and the disruption of the administration of criminal justice were considerable. As to purpose, Chief Justice Warren first observed that "the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree." [384 U.S. pages 728–729, 86 S.Ct. page 1778]. However, it was noted that coerced confessions were governed by a separate retroactivity rule allowing full retroactivity. The parties involved in *Johnson* were "prisoners found guilty on trustworthy evidence." [page 731, 86 S.Ct. page 1778].

In *Stovall* the court followed the *Johnson* lead in limiting the *Wade* and *Gilbert* decisions to line-ups conducted after the decision date. Justice Brennan's opinion formally enumerated the three factors for determining retroactivity: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards," [388 U.S. page 297, 87 S.Ct. page 1970].

Applied to the *Stovall* case, the Court in essence held that the clear prospective thrust of factors (b) and (c) should outweigh the somewhat retroactive thrust of factor (a). The opinion dwells on the uniform national reliance on the pre-*Wade* standard and the great disruption worked by having to hear claims of non-representation by counsel at a lineup. While the Court granted that misidentification at lineup can taint the determination of guilt, it found that this danger is not present in all cases. Further, the Court noted, the rule does not cover the situation in which the confrontation is so unfair as to infringe an accused's right to due process of law.

Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), were search and seizure cases. While differing from *Linkletter* in making the date of the search (*Desist*) or the date of the introduction of the evidence (*Fuller*) the cut-off point for retroactivity claims, the two decisions followed the *Linkletter* reasoning in denying full retroactivity. Justice Stewart in *Desist* cited the *Stovall* rules but then commented: "Foremost among these factors is the purpose to be served by the new constitutional rule." [page 249, 89 S.Ct. page 1033] * * * It is to be noted also that we have relied heavily on the factors of the extent of reliance and consequent burden on the administration of justice only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity." [page 251, 89 S.Ct. page 1035]. Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), reapplied the reasoning of Johnson v. New Jersey to *Miranda* retrials.

Two cases involving essentially new matters were Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), and De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968). *Halliday* denied full retroactivity to the nonconstitutional Rule 11 guilty plea standards established in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). While admitting the voluntariness of pleas was a purpose for the rule, the Court noted, as in *Johnson*, that the coerced plea could be attacked at any time. Faced with the technically deficient plea only, reliance and administration factors were sufficient to bar full retroactivity. *De Stefano* weighed the purpose of jury trials against prior reliance and the effect on the administration of justice. Considering the retroactivity of Duncan v. Louisiana, the Court in essence held that a trial by judge was as likely to produce a fair determination of guilt as a trial by jury. A closer question was involved in the *De Stefano* Court's determination of the retroactivity to be granted Bloom v. Illinois. *Bloom* granted a right to jury trial in serious criminal contempt cases. One purpose of the rule was to prevent trial of the contempt by the same judge who had presided when the contempt was committed. *De Stefano* admitted that the issue of guilt might be more fairly tried by a jury. However, the serious effects on the administration of justice and the strong tradition of non-jury contempt trials defeated full retroactivity.

Following the *Stovall* decision in 1967, the Court has granted full retroactivity in four situations. In each instance the integrity of the guilt-determination process is cited. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (counsel at probation revocation-sentencing) and Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (counsel at preliminary hearing guilty plea) are tied to the *Gideon* line of cases. *See also* Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963). Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the death penalty-jury standards case, found that the "selection standards employed here necessarily undermined 'the very integrity of the * * * process' ", [page 523 no. 22, 88 S.Ct. page 1777] and demanded full retroactivity. Roberts v. Russell, 392 U.S.

293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), found the admission of a *Bruton* confession to be a "serious flaw" in the fact-finding process at trial. "[E]ven if the impact of retroactivity may be significant, the constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined." [page 295, 88 S.Ct. page 1922]. Finally, Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed. 2d 508 (1969), gave full retroactivity to the holding of Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), that the absence of a witness does not by itself allow the use of his preliminary hearing testimony. Opposing counsel's cross-examination and the fact finder's opportunity to determine credibility through personal confrontation were both seen as significantly involved in fairly determining guilt.

In the five years since *Linkletter* the Court has employed a variety of retroactivity standards. The "purpose-reliance-effect" trial of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), invites a reasoned balancing of factors on which judges may well disagree. While Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), gives primacy to the purpose of the new constitutional standard (i. e., whether it relates to the integrity of the basic guilt-innocence determination), examination by the Court's decisions before and after *Desist* indicates a willingness to have retroactivity turn on the reliance on past rules or the effect on the administration of justice.

Misidentification at a police line-up certainly may convict the innocent. Stovall v. Denno, *supra,* however, refused to give retroactive effect to the *Wade* and *Gilbert* decisions. Likewise prosecutorial comment on a defendant's refusal to testify may well jeopardize a fair determination of guilt by stressing to a jury that the only reason for a defendant's not testifying is his guilt of the crime charged. Yet the *Griffin* rule was given retroactivity in *Tehan* only to cases on direct review on the date of the *Griffin* decision. Finally, the trial of the factual issues in a serious criminal contempt case by the same judge who presided when the contempt occurred certainly endangers the integrity of the fact-finding process. However, De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) granted only prospective application to Bloom v. Illinois.

It is probably impossible to completely rationalize the decisions of the Supreme Court on the subject of retroactivity. A close reading of those decisions reveals an essentially ad hoc consideration of each newly articulated constitutional right. What standards have been set have proved transitory. Where the Court has treated itself bound by a standard, it has shown a willingness to bend, if not break, that standard in the interests of a desirable result.

Despite the uncertainty, however, certain conclusions may be drawn. (1) There is no constitutional or jurisprudential reason requiring the fixing of the date as to the operation of the new rule of law. (2) The Supreme Court in the majority of the cases on retroactivity has denied full retroactivity. All have been limited retroactively except the cases involving counsel, most recently McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) and Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968), one involving death penalty-jury standards, Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), one on the *Bruton* problem, Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), and one on the use of an absent witness's testimony at a preliminary hearing, Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969). (3) The purpose of a new rule has not always in fact determined its retroactivity. (4) In most instances only the litigant in the rule changing decision received the benefit of the new rule.

One fact at least is obvious in the consideration of *Leary* retroactivity. A

grant of full retroactivity would place a tremendous burden on the administration of federal justice in the circuit.

All cases upon direct appeal would be affected and subject to reversal and remand. Under Section 28 U.S.C. § 2255 any prisoner in custody under a conviction resulting from a trial in which the presumption was used may attack the sentence and the District Court

> "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

The trial court will be required to comb the record if and when it becomes available to determine the question of harmless error. If questionable a new trial will be required. Witnesses once available may not be easy to locate or may no longer be obtainable. Evidence once thought unnecessary in view of the presumption may have disappeared. It can be said that if people otherwise innocent have been convicted, these considerations are unimportant. It can also be said that there may have been many cases where prosecutors could have obtained convictions by using then readily available evidence which was not believed necessary in view of the presumption. The burden on the administration of justice will be affected from the offices of the District Attorneys through the United States District Court and to this court. Exact figures are not available showing the number of prisoners now serving time for convictions in which the presumption in 21 U.S.C. § 176a was used. But related figures allow intelligent speculation. They indicate that retrials by the hundreds would be required following a holding that *Leary* was to be given full retroactive effect in the circuit.[2] The application of the controlling criteria to the situation existing in this circuit would be persuasive of a rule which would apply only to those cases where trial commences after the date of the decision in *Leary* which was May 19, 1969. I would so decide. I am not unmindful of decisions in other circuits which have arrived at a different conclusion.[3] None of them indicates

2. Table D2, attached to the Annual Report of the Director of the Administrative Office for 1969 lists "Criminal Cases Commenced" by categories for the F.Y.s 1965–1969. "Narcotics" is broken down in three groups, "Marihuana Tax Act, Border Registrations, and Other." The Administrative Office advises that Sec. 176a cases are included within the category "Marihuana Tax Act" along with cases under Title 26—i. e., Tax Count Cases. The figures for the "Marihuana Tax Act" category are as follows:

   1965 — 562
   1966 — 689
   1967 — 989
   1968 — 1502
   1969 — 1936
   5678

   Table D2 refers to "Commenced." Judge Carter, from his experience in the district court, would estimate that conservatively 80% of those cases commenced went to sentence following plea or trial. 80% equals 4542.

   Again based on the district court experience, a conservative estimate would be that 70% of the cases are laid under § 176a and 30% under the tax provisions of Title 26. 70% of 4542 equals 3179.

   A count made by the clerk of the district court for the Southern District of California for the period from 7/1/68 to 12/31/68 confirms this estimate and shows the following:
   Sec. 176a cases filed 223
   Tax Count cases filed 79, 26% of 302.
   302

   There is no way to determine, but undoubtedly a great number of § 176a cases were ones in which the presumption was used. As the majority observes, the presumption had been uniformly upheld in the courts prior to *Leary*.

3. United States v. Lopez, 414 F.2d 272 (2nd Cir. 1969), limited retroactivity; United States v. Scardino, 414 F.2d 925 (5th Cir. 1969), limited retroactivity; Rowell v. United States, 415 F.2d 300 (8th Cir. 1969), full retroactivity; Santos v. United States, 417 F.2d 340 (7th Cir. 1969), limited retroactivity; Otey v. United States, 417 F.2d 559 (D.C.Cir. 1969), limited retroactivity; Ramseur v. United States, 425 F.2d 413 (6th Cir. April 8, 1970), limited retroactivity.

that the problems existing in this circuit were considered there.

In conclusion, I do not believe we are required to give Scott the benefit of the *Leary* decision. The justifiable prior reliance on the presumption by law enforcement officials and the potentially massive burden placed on the administration of justice outweigh considerations arguing for full or partial retroactivity.