Paul J. ROBINSON et al.,
Plaintiffs-Appellees,

v.

Leonard J. HEILMAN,
Defendant-Appellant.

No. 75–1945.

United States Court of Appeals,
Ninth Circuit.

Oct. 31, 1977.

David B. Toy (appeared), Toy & Rymer, Los Angeles, Cal., for defendant-appellant.

Cromwell Warner, Jr. (appeared), Michael R. Matthias, Los Angeles, Cal., for plaintiffs-appellees.

Before CHAMBERS and HUFSTED-LER, Circuit Judges, and WONG,* District Judge.

PER CURIAM:

The central issue on this appeal is whether *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) requires reversal of a judgment in favor of the plaintiffs in this federal securities litigation. The plaintiffs attempt to avoid the impact of *Hochfelder*, which came down after judgment was rendered, on two grounds: (1) defendant's failure to except to a jury instruction which permitted the jury to impose liability for negligence prevents his raising the issue on appeal, under Rule 51 (F.R.Civ.Proc.), and (2) *Hochfelder* should not be applied to persons like defendant, who are direct participants in making the representations upon which a Section 10(b)—Rule 10b–5 action is based. We reject both contentions.

The three plaintiffs each owned one-third of all the issued and outstanding stock of Frey Industrial Supply Company ("Frey"). Plaintiff Robinson, who was president of Frey, was the only plaintiff who was active in the management of Frey and in the merger transactions with Nova-Tech, Inc. ("Nova"). Nova's acquisition of Frey began in September, 1968, with a meeting between Robinson and defendant Heilman, who was president and chief executive officer of Nova. Heilman was the principal negotiator of the merger for Nova. In January, 1969, the merger was consummated by the exchange of all issued and outstanding shares of Frey for 50,000 shares of Nova stock. Robinson continued as president of Frey and thereafter became a vice president and a director of Nova. In March, 1970, Robinson unsuccessfully sought to rescind the original Frey-Nova merger agreement, and this suit followed.

The action was originally brought against Nova, its principal officers, directors, and all of its subsidiaries, seeking damages for violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a–hh (1970)) and Rule 10b–5 (17 C.F.R. § 240.-10b–5 (1977)), and for common law fraud and breach of contract. Nova and its subsidiaries were adjudicated bankrupt prior to trial, and plaintiffs dismissed them from all further proceedings. Held, a principal stockholder of Nova as well as a director, settled the suit as against him, but was thereafter joined by court order as an involuntary plaintiff. As part of his settlement agreement, Held undertook to bear the expense of litigation on behalf of plaintiffs and acquired 40 percent of any net recovery that the plaintiffs might make.

The action proceeded to trial before a jury against Heilman, Fosberg, the vice president and controller of Nova, and three outside Nova directors. All of the defendants counterclaimed for contribution and indemnity against Held.

The jury returned a verdict exonerating the three outside directors and imposing liability upon Heilman and Fosberg for damages in the sum of $173.500. Only Heilman has appealed. The district court re-

* Honorable Dick Yin Wong, United States District Judge, District of Hawaii, sitting by designation.

jected the defendants' claims for setoff or contribution from Held in satisfaction of the judgment for the plaintiffs.

The Section 10(b), Rule 10b–5 action was based upon the claim that the defendants knew, or in the exercise of reasonable diligence should have known, that representations in the merger agreement concerning the status of financial statements were false. The agreement recited that "there has not been any material adverse change in, or event or condition materially and adversely affecting, the condition (financial or otherwise), properties, assets, liabilities, or to the knowledge of any officer of Nova-Tech, the business or prospects of Nova-Tech" since July 31, 1968.[1] Nova further warranted in January, 1969, "on the date hereof, the representations and warranties made by Nova-Tech in the Agreement and Plan of Reorganization dated as of December 23, 1968 ('Agreement') between Nova-Tech and the shareholders of Frey Industrial Supply Company, a California corporation, are true and correct in all material respects."

Plaintiffs contended that Nova's financial condition had substantially deteriorated during the latter half of 1968 and that Heilman either knew or should have known the true facts when he executed the documents in December, 1968, and in January, 1969.

## I

The district court, following *White v. Abrams*, 495 F.2d 724 (9th Cir. 1974), instructed the jury that a corporate director had the duty to advise the purchasers of the stock of a corporation "if any material statement made to [them] is false or misleading, if such director knows or in the exercise of ordinary care should know, first, that such statement was made, and second, that it was false or misleading." The district court also told the jury that "persons involved in actual negotiations and in the providing of information in connection with transactions such as those here in issue, must be diligent in ascertaining that the information provided is truthful and is provided in good faith." Heilman did not expressly except to these instructions, as required by Rule 51 of the Federal Rules of Civil Procedure. Plaintiffs argue that Rule 51 forecloses Heilman from contending that the instructions violated *Hochfelder*.

█ Rule 51 was designed to prevent unnecessary new trials caused by errors in instructions that the district court could have corrected if they had been brought to its attention at the proper time. (*Investment Service Co. v. Allied Equities Corp.*, 519 F.2d 508 (9th Cir. 1975); *Seltzer v. Chesley*, 512 F.2d 1030 (9th Cir. 1975); *Cohen v. Franchard Corp.*, 478 F.2d 115 (2d Cir. 1973). *Cf. Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943).) The rule was not intended to require pointless formalities. "There is no need for an exception after the charge has been given where, as here, the court has been fully informed in advance of the charge as to appellants' contention and it was clear that further efforts to persuade the court would have been unavailing. [citations omitted]" (*Cohen v. Franchard Corp., supra*, 478 F.2d at 122.) Heilman's counsel had earlier unsuccessfully contended that his client should not be liable for

---

1. The key provision in the merger agreement, dated December 23, 1968, was Section 3.2(d): "Nova-Tech has furnished [plaintiffs] with (i) its 1968 Annual Report, which contains a consolidated balance sheet of Nova-Tech as at March 31, 1968, and the related consolidated statements of income and stockholders' equity for the year then ended, certified by Arthur Andersen & Company, certified public accountants, and (ii) an unaudited interim consolidated balance sheet of Nova-Tech as at July 31, 1968, and the related consolidated statement of income. All such financial statements present fairly the financial position of Nova-Tech at such dates and the results of its operations for the periods therein specified, and were prepared in conformity with generally accepted accounting principles applied on a consistent basis. Since July 31, 1968, there has not been any material adverse change in, or event or condition materially and adversely affecting, the condition (financial or otherwise), properties, assets, liabilities, or to the knowledge of any officer of Nova-Tech, the business or prospects of Nova-Tech."

simple negligence. Restating the identical point as an exception to the instruction would have been useless.

Rule 51 would not have prevented Heilman from raising the *Hochfelder* issue on appeal even if his counsel had made no objection of any kind to the negligence part of the instruction. *White v. Abrams, supra,* compelled the district court to reject any objection or exception that Heilman could have made to the negligence portions of the instructions. An exception could not have permitted the district court to "correct" the instructions. The instructions correctly stated the controlling law of the Circuit at the time they were given.

We reject plaintiffs' reading of Rule 51 for the same reasons that we rejected a similar contention based upon Rule 30 of the Federal Rules of Criminal Procedure in *United States v. Scott,* 425 F.2d 55 (9th Cir. *en banc* 1970). No exception is required when it would not have produced any results in the trial court because "a solid wall of Circuit authority" then foreclosed the point. (*Id.* at 57.) Moreover, "were we to insist that an exception be taken to save the point for appeal, the unhappy result would be that we would encourage defense counsel to burden district courts with repeated assaults on the then settled principles out of hope that those principles will be later overturned." (*Id.* at 57–58.)[2]

■ The application of Rule 51 under the circumstances of this case would be particularly inappropriate because the result would be to deny full effect to *Hochfelder,* contrary to the settled rule that federal courts must take into account new and supervening rules of decision as long as the action is *sub judice,* even when the lower tribunal did not do so because the "new" law was not theretofore available. (*E. g., Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *Diffenderfer v. Central Baptist Church,* 404

U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972); *Grow v. Smith,* 511 F.2d 1146 (9th Cir. 1973); *Jarrett v. Resor,* 426 F.2d 213 (9th Cir. 1970).)

## II

Plaintiffs cannot effectively distinguish *Hochfelder* on the ground that the *Hochfelder* rule is inapplicable to a direct participant like Heilman. Nothing in the reasoning of *Hochfelder* provides any sustenance for the contention. In rejecting the Commission's argument that Section 10(b) should be given an expansive reading to effect the overall congressional purpose of protecting investors against injury from false and deceptive practices, the Court said: "The argument simply ignores the use of the words 'manipulative,' 'device,' and 'contrivance'—terms that make unmistakable a congressional intent to proscribe a type of conduct quite different from negligence." (*Ernst & Ernst v. Hochfelder, supra,* 425 U.S. at 199, 96 S.Ct. at 1384.) The Court likewise rejected reading Rule 10b–5 to include liability for negligence on the ground that the Commission would have exceeded the statutory authority granted to it if it had attempted to add negligence to the statutory scheme which excluded that concept. "When a statute speaks so specifically in terms of manipulation and deception, and of implementing devices and contrivances—the commonly understood terminology of intentional wrongdoing—and when its history reflects no more expansive intent, we are quite unwilling to extend the scope of the statute to negligent conduct." (*Id.,* 425 U.S. at 214, 96 S.Ct. at 1391.)

■ *Hochfelder's* rejection of a negligence standard for private litigation under Section 10(b) and Rule 10b–5 is both sweeping and unqualified. That construction forbids our imposing any exception for direct participants, thus limiting *Hochfelder* to

2. We have repeatedly adhered to the *Scott* principle in our Circuit. (*E. g., United States v. Fueston,* 426 F.2d 785, 787 (9th Cir. 1970); *United States v. Wanger,* 426 F.2d 1360 (9th Cir. 1970); *United States v. Ingman,* 426 F.2d 973, 976 (9th Cir. 1970); *United States v. Dem-*

*ma,* 523 F.2d 981, 987 (9th Cir. 1975).) The *Scott* reasoning has also been adopted in other Circuits. (*Martone v. United States,* 435 F.2d 609, 611 (1st Cir. 1970); *United States v. Liquori,* 438 F.2d 663, 665 (2d Cir. 1971); *United States v. Grant,* 489 F.2d 27, 29 (8th Cir. 1973).)

those persons who have less direct connections with the transactions attacked under the statute and the rule.

Of course, the closer the relationship of the person charged to the corporation and the greater his participation in the transactions attacked, the easier it will be to prove the requisite *scienter.* That state of affairs, however, provides no justification for any inference that direct participants have any greater or different duty to buyers or sellers of securities than those whose connections with the transactions may be more remote.

Disposition of the central issues on the appeal makes it unnecessary to reach the other contentions of the parties. We decline to give any advice about the correctness of the district court's ruling on the counterclaim, because the issue may become moot on retrial.

REVERSED AND REMANDED FOR A NEW TRIAL.