760 P.2d 547

Tana RANBURGER, Plaintiff/Appellee,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, a Delaware corpora-
tion, National Railroad Passenger Cor-
poration, also known as Amtrak, a cor-
poration organized under the Rail Pas-
senger Service Act of 1970, as amended,
and the laws of the District of Colum-
bia, and Weyman L. Moreland, Defend-
ants/Appellants.

No. 2 CA–CIV 5792.

Court of Appeals of Arizona,
Division 2, Department A.

Nov. 26, 1986.

Fred J. Pain, Jr., Scottsdale, for plain-
tiff/appellee.

Evans, Kitchel & Jenckes, P.C. by Wil-
liam M. Shattuck, Phoenix, for defend-
ants/appellants.

## OPINION

HATHAWAY, Chief Judge.

This is a wrongful death action com-
menced by appellee, on behalf of herself
and her two minor children, as a result of
an accident which occurred at a railroad

crossing, and in which her husband, Stephen, was fatally injured. Appellant contests the jury's verdict in favor of appellee and the trial court's denial of its motion for judgment notwithstanding the verdict on punitive damages.

At approximately 12:28 a.m. on December 21, 1980, Stephen Ranburger was driving his automobile north on South 36th Street in Phoenix when it collided with a westbound Amtrak passenger train operated by Southern Pacific personnel. Mr. Ranburger was warned of the crossing by an advance warning sign, identification markings painted onto the roadway and a cross-buck signal equipped with alternating flashing red lights and a bell. The crossing is not protected by crossing gates. Mr. Ranburger was scheduled to report to work at 12:30 a.m. at the Garrett Turbine Engine Company, located north of the crossing. There was testimony that the cross-buck lights were operating at the time Mr. Ranburger crossed the intersection and that the oncoming train was blowing its whistle.

The speed limits set by Southern Pacific's personnel at that particular location are 60 miles an hour for passenger trains and 30 miles an hour for freight trains. Appellee's expert testified that the Amtrak train was traveling at 60 miles an hour at the time of the collision. There was other testimony that the train was traveling at a lower speed. There was testimony that approximately 3,400 automobiles daily crossed the 36th Street railroad tracks, which traffic occurred largely at shift changes of factory employees.

Appellee alleged that the collision and her husband's resulting death were proximately caused by the negligence and gross negligence of Amtrak and Southern Pacific Transportation Company. Appellants denied such allegation and asserted that the accident and Mr. Ranburger's death were due to Mr. Ranburger's own negligence and wantonness. Appellants' motion for a directed verdict as to liability was heard and denied at the close of appellee's case, and was renewed and denied at the conclusion of the evidence. The jury returned a

verdict in favor of appellee for compensatory damages of $250,000 against appellants and the City of Phoenix (a defendant not a party to this appeal) and punitive damages of $100,000 against appellants. Appellants filed a motion for judgment notwithstanding the verdict rendered on appellee's gross negligence claim. That motion was denied. Appellants did not file a motion for new trial or a motion for judgment notwithstanding the verdict on the compensatory damages claim. This appeal followed.

Appellants raise two issues on appeal: (1) the trial court committed reversible error in denying appellants' motion for directed verdict given appellee's failure to prove her prima facie case of negligence and/or that appellants' negligence was the proximate cause of the accident, and (2) the trial court committed reversible error in denying appellants' motions for directed verdict and for judgment notwithstanding the verdict given appellee's failure to prove a prima facie case of gross negligence and/or that appellants' gross negligence was the proximate cause of the accident.

## I. COMPENSATORY DAMAGES

■ Appellants argue that we should reverse the jury verdict because appellee did not meet her burden of presenting a prima facie case of negligence and did not, as a matter of law, prove proximate cause. Appellants, however, have not properly presented this issue on appeal by a motion for new trial. A.R.S. § 12–2102(C). Motions filed pursuant to Rule 50(b), Rules of Civil Procedure, 16 A.R.S., satisfy the above statute. *S.H. Kress & Company v. Evans*, 70 Ariz. 175, 218 P.2d 486 (1950). The appellants' Rule 50(b) motion, however, challenged only the punitive damages and did not raise an issue as to the compensatory damages award. Accordingly, § 12–2102(C) precludes our reviewing the sufficiency of the evidence to support the judgment for compensatory damages, and the $250,000 compensatory damage award is affirmed.

## II. PUNITIVE DAMAGES

■ On appeal from denial of the motion for judgment notwithstanding the verdict,

we must view the evidence in a light most favorable to sustaining the verdict and we must determine whether the evidence would permit a reasonable person to reach the challenged verdict. *Maxwell v. Aetna Life Insurance Company*, 143 Ariz. 205, 693 P.2d 348 (App.1984). Punitive damages may be recovered by an injured party if that party's injuries are proximately caused by the defendant's wilful and wanton misconduct. *Schmidt v. American Leasco*, 139 Ariz. 509, 679 P.2d 532 (App. 1983). In addition, "[t]he wrongdoer must be consciously aware of the wrongfulness or harmfulness of his conduct and yet continue to act in the same manner in deliberate contravention to the rights of the victim." *Linthicum v. Nationwide Life Insurance Company*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). In *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986), the court established a new standard which must be met by a plaintiff before punitive damages can be awarded. In *Rawlings*, the court expressed the newly-formulated criteria as follows:

> Thus, to obtain punitive damages, plaintiff must prove that defendant's evil hand [his tortious conduct] was guided by an evil mind. The evil mind which will justify the imposition of punitive damages may be manifested in either of two ways. It may be found where defendant intended to injure the plaintiff. It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

*Rawlings v. Apodaca*, at 162, 726 P.2d at 578.

█ In addition to the "evil mind" requirement set forth in *Rawlings*, the court in *Linthicum* changed the plaintiff's burden of proof necessary to support an award of punitive damages from a preponderance of the evidence to clear and convincing evidence. 723 P.2d at 681.

Even though *Rawlings* was a bad-faith insurance case, as was *Linthicum*, we believe that the language of both cases is sufficiently expansive to govern awards of punitive damages regardless of the tort involved. We therefore examine the actions of appellants in light of *Rawlings* and *Linthicum*.

█ The engineer testified that a speed of 40 mph at the intersection in question would be a little bit foolish. He also stated that a speed of 50 mph would be a very foolish matter and gambling with safety. He finally testified that travelling at 60 mph would be unthinkable. It is uncontroverted that the railroad set the speed limit for the train in the area of the intersection at 60 mph. A guard at one of the plants next to the tracks testified that the train went through the intersection faster than any other train he had seen. Also, appellee's expert established and testified that the train was travelling a speed of 60 mph at the time of the collision.

We find that there was sufficient evidence to submit the question of punitive damages to the jury. However, in view of *Rawlings* and *Linthicum*, the award of those damages must be reversed for retrial of that issue. When there is a change in the law by court decision, the law prevailing at the time of the appellate disposition applies. *Bischofshausen v. Pinal–Gila Counties*, 138 Ariz. 109, 673 P.2d 307 (1983).

In *Carter–Glogau Laboratories, Inc. v. Construction, Production & Maintenance Laborers' Local 383*, 153 Ariz. 351, 736 P.2d 1163 (1986), the court refused to find that *Linthicum* required a remand on the issue of punitive damages. [at 357, 736 P.2d at 1169] We cannot agree with the *Carter–Glogau* court's reasoning. First, the court noted that the alleged wrongdoer's acts would easily fit into the new *Linthicum* standards. This finding goes to a determination of whether sufficient evidence was presented to allow the jury to reasonably assess punitive damages. *Maxwell*, supra.

█ Once the *Carter–Glogau* court resolved the sufficiency issue, we believe its next step should have been to remand for trial to a properly instructed jury. An appellate court may not judge the credibility of witnesses or weigh the evidence in an

attempt to guess whether the jury would or would not award punitive damages under the new standards and new burden of proof. *United California Bank v. Prudential Insurance Company of America,* 140 Ariz. 238, 681 P.2d 390 (App.1983); *Brevick v. Brevick,* 129 Ariz. 51, 628 P.2d 599 (App.1981); *Van Emden v. Becker,* 6 Ariz.App. 274, 431 P.2d 915 (1967). Damages issues especially are within the jury's province. *Acheson v. Shafter,* 107 Ariz. 576, 490 P.2d 832 (1971).

■ Next, the *Carter–Glogau* opinion cites *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977), as support for its conclusion that because the appellant did not raise the new clear and convincing burden of proof at trial or in its briefs on appeal, the issue is waived. [153 Ariz. at 357, 736 P.2d at 1169] Unlike the *Carter–Glogau* situation, or the present facts, *Van Loan* dealt with issues *available* at trial. Because *Rawlings* and *Linthicum* were filed subsequent to both the *Carter–Glogau* and the Ranburger trial, the relevant issues were not available. Any objection by appellant would have been fruitless.

The Ninth Circuit has reasoned in *Robinson v. Heilman,* 563 F.2d 1304 (1977), that failure to except to jury instructions, as required by Rule 51, Federal Rules of Civil Procedure, did not preclude a party from objecting on appeal due to a change in the applicable law. Any exception would not have allowed the court to correct an instruction which correctly stated the law at time of trial. The court stated that:

> No exception is required when it would not have produced any results in the trial court because "a solid wall of Circuit authority" then foreclosed the point. Moreover, "were we to insist that an exception be taken to save the point for appeal, the unhappy result would be that we would encourage defense counsel to burden district courts with repeated assaults on the then settled principles out of hope that those principles will be later overturned." (citations omitted)

563 F.2d at 1307.

The *Robinson* court then applied the law prevailing at the time of appeal.

The defendants in this case did not have the chance to object to the jury instruction outlining the standards and burden of proof for punitive damages. Any objection would have been pointless given the settled law at the time of trial. Additionally, given the appellate level *Linthicum* opinion (*Linthicum v. Nationwide Life Insurance Co.,* 150 Ariz. 354, 723 P.2d 703 (1985)), and the Arizona Supreme Court opinion, supra, it appears that the defendants there also did not object to the burden of proof or standards for punitive damages. The supreme court itself requested that the parties address themselves to the issue of whether the standards should be changed and if so, what they should be. *Linthicum,* supra.

■ Arizona courts have recognized that caselaw may change between the time of trial and of final decision. When such a change occurs, an appellate court must apply the law prevailing at the time of the appellate decision. *Bischofshausen,* supra; *State v. Young,* 135 Ariz. 437, 661 P.2d 1138 (App.1982), cert. den. 464 U.S. 866, 104 S.Ct. 197, 78 L.Ed.2d 172 (1983); *Budreau v. Budreau,* 134 Ariz. 539, 658 P.2d 192 (App.1982); *Arnold v. Knettle,* 10 Ariz. App. 509, 460 P.2d 45 (1969); *Garcia v. City of Tucson,* 1 Ariz.App. 83, 399 P.2d 704 (1965).

We reverse the award of punitive damages because the jury was not properly instructed concerning the plaintiff's burden of proof in accordance with *Linthicum.*

The award of compensatory damages is affirmed, the award of punitive damages is reversed and the case is remanded for a new trial solely on that issue.

HOWARD, P.J., and FERNANDEZ, J., concur.