912 F.2d 1552
 UNITED STATES of America, Appellee,
v.
Santos Jesus MARTINEZ-TORRES, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Luis Alfredo MARTINEZ-TORRES, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Epifanio MARTINEZ-TORRES, a/k/a "Fanny," Defendant, Appellant.
 Nos. 87-2006 to 87-2008.
 United States Court of Appeals,
First Circuit.
 Reheard April 4, 1990.
Decided Aug. 20, 1990.
 
 Selya, Circuit Judge, filed dissenting opinion which was joined by Levin H. Campbell, Circuit Judge.
 Harry Anduze Montano, Hato Rey, P.R., for defendants, appellants.
 J. Douglas Wilson, Atty., Dept. of Justice, Washington, D.C., with whom Daniel Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.
 Before BREYER, Chief Judge, ALDRICH, CAMPBELL, TORRUELLA, SELYA and CYR, Circuit Judges.
 OPINION EN BANC
 BAILEY ALDRICH, Senior Circuit Judge.
 
 
 1
 On May 26, 1987, defendants-appellants were convicted of various drug offenses. Pursuant to a Puerto Rico District Court local rule authorizing the procedure, the jury empaneling had been conducted by a magistrate. Questions not resolved by the magistrate were satisfactorily resolved by the judge in the lobby during a recess, the judge not appearing in court until the empaneling had been completed. Defendants voiced no objection. Their appeals were argued before a panel of this court on May 5, 1989. Again, no question was raised as to the empanelment--a full answer to the government's sometime suggestion that defendants had been holding back for a second go at the cake--but on June 12, 1989, a unanimous Court decided, in Gomez v. United States, --- U.S. ----, 109 S.Ct. 2237, 104 L.Ed.2d 923, that magistrate empanelment was improper. Defendants promptly moved for a remand for vacation of their convictions.[1] The panel affirmed the convictions, United States v. Lopez-Pena, 912 F.2d 1536 (1989), and denied the motions to remand, 912 F.2d 1542 (1989) (2-1). Three of the six defendants petitioned for en banc review of the denial of the remand, which we granted.[2] We now reverse their convictions, and remand for a new trial.
 
 
 2
 The basis of the panel decision was that, although Gomez was retroactive as to all cases that were pending on direct review, a point the government now concedes, Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), magistrate empanelment, though now seen to be an error, was not of such consequence as to be plain error, and therefor was not to be considered in the absence of a contemporary objection. In addition, the panel ruled that the defendants were to be faulted, and that even plain error was to be disregarded as a matter of judicial discretion, because objecting was not "futile" where there was no "solid wall" of authority establishing its uselessness, and the district court should have been afforded the opportunity to correct its error. E.g., United States v. Griffin, 818 F.2d 97 (1st Cir.), cert. denied, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). The government now advances both propositions. We consider the latter first, but start with chronology.
 
 
 3
 As the Gomez Court recited in its opinion, over the years Congress has extended authorization to magistrates for the avowed purpose of relieving district judges, in whole or in part, of some of their many duties. Encouraged by the favorable reception this received from the Court, Mathews v. Weber, 423 U.S. 261, 267-68, 96 S.Ct. 549, 552-53, 46 L.Ed.2d 483 (1976), many district courts adopted local rules passing substantial duties, preliminarily, or finally, to their magistrates. In Puerto Rico it was provided that a magistrate "is authorized to [c]onduct voir dire and select petit juries for the court in civil and criminal cases." D.P.R.R. 506.6. Similar rules were adopted in Rhode Island and New Hampshire, and, we are told, in more than half of the districts, nationwide. Quite evidently these rules were thought authorized. Prior to defendants' trial, in addition to our own case of United States v. Rivera-Sola, 713 F.2d 866 (1st Cir.1983), we find three reported cases of magistrate empanelment under the present statute. United States v. DeFiore, 720 F.2d 757 (2d Cir.1983), cert. denied, 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984); United States v. Bezold, 760 F.2d 999 (9th Cir.1985), cert. denied, 474 U.S. 1063, 106 S.Ct. 811, 88 L.Ed.2d 786 (1986); United States v. Peacock, 761 F.2d 1313 (9th Cir.), cert. denied, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985). See, also, a case even prior thereto, Haith v. United States, 342 F.2d 158 (3d Cir.1965). In none did the defendant succeed. In some instances, the defendant failed outright; in others, on the ground that he had not objected below.
 
 
 4
 In Rivera-Sola we held that where defendant had failed to object below magistrate empanelment was not plain error to be considered on appeal. Fed.R.Crim.P. 52(b). At the same time, in an extended discussion, we voiced unreserved approval of the practice. Saying that it "requires comment," we quoted Congressional history favoring delegating powers to magistrates; noted the Court's general approval of delegation in Mathews v. Weber, 423 U.S. at 267-68, 96 S.Ct. at 552-53; and cited specific approvals of this practice by others. We concluded, "Presiding at the selection of a jury is a recognized 'additional duty' of a magistrate." Our final remark was, "We end with a general observation. We think that a magistrate can effectively conduct the voir dire and preside at the selection of juries in civil and criminal cases." Rivera-Sola, 713 F.2d at 872-74.
 
 
 5
 Though dictum, this endorsement was especially significant in that not only was it unnecessarily volunteered, but we had recently been advised not to limit ourselves to plain error rulings in cases of improper district court practices of broad consequence, but to exercise our supervisory powers, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616 (1981), and we especially noted that the Puerto Rico magistrate empaneling was "a regular practice." In sum, this was a clear endorsement, and not a passing observation leaving defendants with a reasonable hope that they might persuade the Puerto Rico court to jettison its time-saving rule. Even had the panel been correct in defining futility as requiring a "solid wall,"[3] we see no porosity here, not only because of the clear Rivera-Sola language, but because of the nationwide practice nowhere condemned. The panel's ruling favors only obnoxiously belligerent counsel who, in spite of history, or ignorant thereof, object to everything as a matter of principle, or counsel who are unduly concerned with contentious clients. Cf. United States v. Scott, 425 F.2d 55, 58 (9th Cir.1970). We think defendants' failure to object here entirely excusable.
 
 
 6
 It does not follow that defendants are in as favorable a position as if objection had been made below. Even if counsel is totally reasonable in not objecting, we do not, on appeal, consider rights not originally sought unless they are of great importance; it is not enough that the error was not harmless. However, although a test that is sometimes applied is whether, but for the error, the result would probably have been different, e.g., United States v. Williams, 809 F.2d 75, 82 (1st Cir.1986), cert. denied, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987), the question is not so limited. See, e.g., United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) ("seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings"); United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) ("undermine[s] the fundamental fairness of the trial"); United States v. Griffin, 818 F.2d at 100 ("seriously affect the fundamental fairness and basic integrity of the proceedings"). While these quoted statements are generalities, they would seem clearly to describe the difference between a magistrate empowered by statute to preside in a misdemeanor trial with the defendant's written consent, 18 U.S.C. Sec. 3401(b), and a magistrate, who, with no ostensible powers, presides in a felony trial without even informed oral consent. Such a magistrate rises no higher than a man or woman taken off the street. The dissent's subjective approach, noting that the magistrate apparently did well, seems particularly difficult to reconcile with Gomez's forceful language.
 
 
 7
 It is true that the Gomez Court noted that the defendant had objected below--thereby obviating the Court's need to consider arguments for penalizing him for the tardiness of his claim--but the fact that it was deciding only such a case does not detract from its language.
 
 
 8
 [V]oir dire [is] "a necessary part of trial by jury." Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice ... or predisposition about defendant's culpability....
 
 
 9
 . . . . .
 
 
 10
 Far from an administrative impanelment process, voir dire represents jurors' first introduction to the substantive factual and legal issues in a case. To detect prejudices, the examiner--often, in the federal system, the court--must elicit from prospective jurors candid answers about intimate details of their lives. The court further must scrutinize not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality. But only words can be preserved for review; no transcript can recapture the atmosphere of the voir dire, which may persist throughout the trial.
 
 
 11
 Gomez, 109 S.Ct. at 2246-47 (citations omitted; final emphasis supplied). The Court concluded with the statement that "basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." Id. at 2248.
 
 
 12
 If empaneling the jury is a "critical stage of a criminal trial," and there is no one with "jurisdiction to preside," surely this "affect[s] the fairness, integrity [and] public reputation" of the proceedings. What would prevent a judge from absenting himself from the trial some morning to attend to other business and appointing an able clerk to preside, provided that the clerk's evidentiary rulings were within discretionary limits?
 
 
 13
 We agree with United States v. France, ante, n. 3, applying Gomez even though the defendant had not objected below. We cannot accept the Second Circuit's simple assertion that Gomez depended on the existence of prior objection, United States v. Mang Sun Wong, 884 F.2d 1537, 1544-46 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990); followed in United States v. Musacchia, 900 F.2d 493 (2d Cir.1990); nor the Seventh Circuit's assertion that the error was not prejudicial, United States v. Wey, 895 F.2d 429, 431 (7th Cir.1990). A Third Circuit majority opinion contains an interesting discussion of consent; concluding that magistrate authority could be conferred by "defendant's consent." The court then found this in counsel's mere failure to object. Government of the Virgin Islands v. Williams, 892 F.2d 305, 310-12 (3d Cir.1989) (one judge concurring, but because not plain error). This is a radical jump. The statutory concept of requiring defendant's written consent, even for a misdemeanor trial, necessarily negates waiver, even oral consent, by counsel for an uninformed defendant in a felony case.
 
 
 14
 In sum, quite apart from plain error in conventional terms, there has been an unexcused violation of a fundamental provision of the statute. Nor, in the light of the Gomez Court's description of its basic importance, can we distinguish between empanelment and the taking of evidence.
 
 
 15
 Finally, we comment briefly on Judge Campbell's dissent. At the time of the panel hearing there was no suggestion in the record, or by counsel, that what was described as a regular practice of magistrate empaneling was ever departed from, and the panel division was over whether counsel should, nevertheless, have attempted it, the majority view being that defendants should have endeavored to persuade the court to depart from its practice, the dissent saying that, for practical purposes, in light of Rivera-Sola's endorsement, this would have been futile. Magistrate empanelment was recognized as a regular practice in Rivera-Sola; in the argument before the panel; and in the present government brief.[4] In oral argument government counsel stated he knew of two exceptions, thus that "regular practice" should be read as "almost invariable practice." If the matter was not to go shortly to the Supreme Court, we might pursue the correctness, and effect, of a new record. As it is, we stay where we are.
 
 
 16
 With respect to those appellants who timely sought rehearing en banc,[5] the verdict of the jury will be set aside, the district court judgment will be vacated, the panel opinion and the opinion of the court denying the motion to remand will be withdrawn to the extent inconsistent with this opinion, and the case will be remanded to the district court for a new trial. In view of the Supreme Court's grant of certiorari in United States v. France, 886 F.2d 223 (9th Cir.1989), cert. granted, --- U.S. ----, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990), however, the mandate of this court ordering the foregoing is stayed until further order.
 
 
 17
 SELYA, Circuit Judge, with whom LEVIN H. CAMPBELL, Circuit Judge, joins (dissenting).
 
 
 18
 Although I freely concede that the issue is debatable, I must respectfully dissent from the decision of the en banc court. I remain of the opinion that, in the interval between our decision in United States v. Rivera-Sola, 713 F.2d 866 (1st Cir.1983) and the Court's decision in United States v. Gomez, --- U.S. ----, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), a preserved objection was a prerequisite to a successful appeal based on a magistrate's jury empanelment. In this case, there was no such preserved objection and no issue of fairness or justice necessitates that the defendants' convictions be vacated. Gomez, by its terms, does not demand so arbitrary a result. Thus, the defendants' convictions should stand.
 
 
 19
 I am mindful that the Supreme Court, apparently intent upon resolving the split in the circuits, has lately taken certiorari in United States v. France, 886 F.2d 223 (9th Cir.1989), cert. granted, --- U.S. ----, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990). Rather than reinvent the wheel, therefore, I simply reiterate, in slightly edited form, what we wrote in the original panel opinion, 890 F.2d 490, now withdrawn.
 
 
 20
 In Gomez, the defendants preserved their rights, and the Court was careful to limit its holding accordingly. See, e.g., Gomez, 109 S.Ct. at 2239 (describing "question presented" as "whether presiding at the selection of a jury in a felony trial without the defendant's consent " is a proper office of a magistrate) (emphasis supplied). In the case before us, defendants did not object to the empanelment, and we must determine the effect of this failure. As the majority recognizes, see ante at 1555-56, the circuits which have addressed similar questions in Gomez's aftermath have reached different conclusions, sometimes by very different routes.
 
 
 21
 * Ordinarily, the law ministers to the vigilant, not to those who sleep upon their rights. In consequence, a litigant, through counsel, must usually stake out his opposition to a trial court's ruling on pain of forfeiting any right subsequently to complain. There are sound policy reasons behind the raise-or-waive rule: calling an incipient error to the judge's attention alerts both the court and opposing counsel, affording an opportunity to correct the problem before harm is done; it also prevents litigants from having their cake and eating it too, say, by making a strategic judgment and later, when the result proves infelicitous, assigning error.
 
 
 22
 Notwithstanding the strength and salience of these policies, there are exceptions to the raise-or-waive rule. One such exception is for "plain error". Fed.R.Crim.P. 52(b). The rubric has been much defined, mostly by way of uncontroversial generalities. Plain errors are those that "seriously affect the fairness, integrity or public reputation of judicial proceedings," United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); or those of such magnitude that "the trial judge and prosecutor were derelict in countenancing" them, United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); or those that "undermine the fundamental fairness of the trial," United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). We, ourselves, have described plain errors as "those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below." United States v. Griffin, 818 F.2d 97, 100 (1st Cir.), cert. denied, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). Courts seem agreed that the doctrine is to be used "sparingly," Frady, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14; Smith v. Massachusetts Inst. of Technology, 877 F.2d 1106, 1110 (1st Cir.1989), and then only where the error likely had an "unfair prejudicial impact on the jury's deliberations." Young, 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14.[6] In a nutshell, relief on "plain error" grounds is reserved for "those circumstances in which a miscarriage of justice would otherwise result." Frady, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14; accord Griffin, 818 F.2d at 100; Nimrod v. Sylvester, 369 F.2d 870, 873 (1st Cir.1966).
 
 II
 
 23
 * Although the idiom of plain error is familiar, its application, as in this case, is often beset with uncertainty.[7] To be sure, as the majority recounts, we earlier concluded that a criminal defendant who failed to object to a magistrate's jury empanelment "waived his right to object," the same not amounting to plain error. Rivera-Sola, 713 F.2d at 872, 874. See also United States v. Ford, 824 F.2d 1430, 1434-39 (5th Cir.1987) (en banc) (holding practice to be impermissible, but affirming conviction because defendant "did not object and ... trial was fundamentally fair"), cert. denied, 484 U.S. 1034, 108 S.Ct. 741, 98 L.Ed.2d 776 (1988). Nevertheless, the Gomez Court's holding that the Federal Magistrates Act does not allow delegation of jury selection to magistrates in felony cases, 109 S.Ct. at 2240-47, alters the calculus of plain error, if not necessarily the result.
 
 
 24
 In hindsight, given Gomez, the error below now appears obvious. But as explained above, plain error requires more than retrospective obviousness; unless the error rendered the trial fundamentally unfair, or overlooking it would shock the conscience, then the error is not "plain."
 
 
 25
 Appellants' argument for plain error, as we understand it, has four prongs.[8] This court, which pegs its ruling on "an unexcused violation of a fundamental provision of the [Federal Magistrates Act]," ante at 1556, synthesizes the four prongs. Reliance on this rather strange amalgam, which my brethren concede is "quite apart from plain error in conventional terms," id., requires me to examine each prong.
 
 
 26
 First, appellants suggest (though the majority, to its credit, seemingly disagrees) that Gomez, which ruled harmless-error jurisprudence inapplicable to empanelment by a magistrate, 109 S.Ct. at 2247-48, has preempted our determination. Stating that "harmless-error analysis does not apply in a felony case in which, despite the defendant's objection ... an officer exceeds his jurisdiction by selecting a jury," id. at 2248, however, is to say nothing--or next to nothing--about plain error.
 
 
 27
 Simply put, visualizing plain error and harmless error as flip sides of the same coin is wrong. See United States v. Acevedo, 842 F.2d 502, 508 n. 3 (1st Cir.1988); United States v. Silverstein, 732 F.2d 1338, 1349 (7th Cir.1984), cert. denied, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985); United States v. Blackwell, 694 F.2d 1325, 1340-41 (D.C.Cir.1982); 3A C. Wright, Federal Practice and Procedure: Criminal 2d Secs. 851, 856 (1982). The difference in dimension between plain error and reversible error may frequently be small--but it is real. And, the policies which drive the two concepts are largely dissimilar. I agree with the Seventh Circuit that, unlike harmless-error analysis (which focuses on the prejudicial nature vel non of a preserved objection, and thus, seeks to give a diligent defendant his due), excusing a litigant's outright neglect is considerably more disruptive of our system of justice:
 
 
 28
 Reversing a conviction on the basis of an error that the defendant's lawyer failed to bring to the judge's attention is inconsistent with the premises of an adversary system and disruptive of the efficient operation of the criminal justice system. It is justifiable only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted.
 
 
 29
 Silverstein, 732 F.2d at 1349; accord Griffin, 818 F.2d at 100 (plain error different from "prejudicial" error); McMillen v. United States, 386 F.2d 29, 35 (1st Cir.1967) (same), cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968).
 
 
 30
 The next prong is a branch of the first. The majority, ante at 1555, quotes liberally from Gomez to indicate the importance of jury selection and the "basic" nature of "a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." Gomez, 109 S.Ct. at 2248. Yet, as the Second Circuit has recognized, see United States v. Wong, 884 F.2d 1537, 1545 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990), the Gomez Court's concern was with whether the error--to which objection had been preserved--could ever be considered harmless beyond a reasonable doubt. See, e.g., Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967); Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230-31, 11 L.Ed.2d 171 (1963). Thus, the language in question, read in context, signals only the Court's perception that there would always be "a reasonable possibility that the [error] complained of might have contributed to the conviction." See Fahy, 375 U.S. at 86-87, 84 S.Ct. at 230-31. Be that as it may, an error, to be "unplain," need not be harmless beyond all reasonable doubt. More is needed to breach the sturdy fortifications surrounding the raise-or-waive rule.
 
 
 31
 In effect, the second prong on which reversal rests is tantamount to a declaration that the right to have an Article III judge preside at empanelment is so essential to the fairness of a felony trial that it cannot be waived. But, that dog will not hunt. This, perhaps, is the crux of the matter; unlike the majority, I see no a priori connection between the presiding of a magistrate over voir dire--even a statutorily unauthorized presiding--and fundamental unfairness to a defendant. Nothing inherent in the position, appointment, training, or function of magistrates necessitates a categorical conclusion that their participation renders empanelment proceedings grossly unjust. Indeed, if any categorical assumption were to be made, I would feel more inclined to assume the exact opposite: the neutral, detached, and experienced perspective of magistrates bolsters the inference that proceedings conducted under their auspices, even outside the scope of their legal jurisdiction, are likely fair.
 
 
 32
 More importantly, even if it may be presumed that depriving a defendant of the right to have an Article III judge preside over voir dire entails some unfairness to the defendant, the deprivation is relatively innocuous. Time and again, courts have upheld waivers of rights equivalent to, or more basic than, this one.[9] See, e.g., United States v. Figueroa, 818 F.2d 1020, 1025 (1st Cir.1987) (lack of timely objection foreclosed apprehended defendant's argument that he was not brought before magistrate without unnecessary delay); United States v. Bayko, 774 F.2d 516, 517 (1st Cir.1985) (ex post facto defense pretermitted by failure to raise); United States v. Bascaro, 742 F.2d 1335, 1365 (11th Cir.1984) (failure to object at second trial waives double jeopardy defense), cert. denied, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985); United States v. Coleman, 707 F.2d 374, 376 (9th Cir.) (fifth amendment claim waived if not raised at trial), cert. denied, 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983); Paul v. Henderson, 698 F.2d 589, 592 (2d Cir.) (same as Bascaro; collecting cases), cert. denied, 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983); United States v. Surridge, 687 F.2d 250, 255 (8th Cir.) (fourth amendment objection waived if not seasonably raised), cert. denied, 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 614 (1982); United States v. Goodwin, 612 F.2d 1103, 1105 (8th Cir.) (sixth amendment claim not surfaced at trial should not be considered on appeal), cert. denied, 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980).
 
 
 33
 The third prong intimates the existence of some unfairness in this particular empanelment. The majority gives this no credence. Nor do I. Magistrate Castellanos fully protected defendants' legitimate rights. The judge was available and, when defendants pressed an objection before the magistrate, the judge resolved the question. The magistrate's preliminary comments to the jury were standard and defendants voiced no objection (then or now) to any portion of what was said. Questions were addressed to the venire from a prepared form. Once the jury was chosen, the judge--not the magistrate--gave the start-of-trial instructions. From aught that appears, the empanelment was scrupulously fair and the jury unbesmirched.
 
 
 34
 I come last to the fourth prong: what I term the court's discretion. See, e.g., Reilly v. United States, 863 F.2d 149, 161 (1st Cir.1988); United States v. Krynicki, 689 F.2d 289, 291 (1st Cir.1982). The pivotal inquiry here is whether counsel can be excused for not having raised the point below (thus affording the trial court the opportunity to make the correction itself, avoiding wasted effort). Griffin, 818 F.2d at 99-100. The majority argues that this court had already approved the practice in Rivera-Sola, so that objecting would have been like shouting into a gale-force wind. A contrary view, they say, "favors only obnoxiously belligerent counsel." Ante at 1554. I am not persuaded.
 
 
 35
 In Rivera-Sola, we held that jury empanelment by a magistrate was not plain error. 713 F.2d at 874. Other comments, although generally approving of the practice, were obvious dicta. No reported case in this circuit (or any other circuit, save the Ninth) had, before this jury was chosen, sanctioned the practice in the face of a contemporaneous, preserved objection. Put another way, in this circuit, unlike in the Ninth, there was no " 'solid wall of circuit authority' which would have prevented the district court from correcting the alleged error." See France, 886 F.2d at 228 (quoting Guam v. Yang, 850 F.2d 507, 512 n. 8 (9th Cir.1988) (en banc)). I strongly believe, therefore, that the justification for the "solid wall" exception does not pertain in the case at bar.
 
 
 36
 The exception's genesis, as France explained, is that "[o]bjecting in the trial court to a clearly defined rule of the circuit is futile, inasmuch as the trial court cannot overrule authority binding on it." Id.; accord Martone v. United States, 435 F.2d 609, 610-11 (1st Cir.1970). There was no binding rule in this circuit such as necessarily foredoomed an objection to magistrates' empaneling. A single case, the holding of which was dependent on the defendant's failure to object, is hardly a "solid wall." This is particularly true of a matter like utilization of a magistrate. Even in circuits where courts of appeals had authorized the practice of having magistrates preside at empanelment, no court of appeals had insisted that the practice be followed. The district judge always retained discretion to preside over jury selection. In that sense, then, district courts were never duty-bound in the punctilious observance of circuit precedent to overrule an objection to the magistrate's participation.
 
 
 37
 What little anecdotal evidence can be found suggests that, in the interval between Rivera-Sola and Gomez, district courts were willing to listen if a felony defendant pressed an objection to having a magistrate preside at empanelment. See, e.g., United States v. Kelley, No. 84-0029 (D.R.I. May 30, 1984) (upon defendant's objection, magistrate stands down and district judge empanels in felony tax prosecution). Because the precedential wall in this instance was more porous than the majority will acknowledge, there was no valid reason for defense counsel to feel certain that timely objection to the magistrate's involvement would be futile.[10] For that reason, and because there is not the slightest hint that the empanelment was actually unfair, the jury tainted, or the verdicts affected, I think it wrong to exercise discretion to relieve the defendants from the natural consequences of their procedural default.
 
 III
 
 38
 In Gomez, the Court took pains not to foreclose a plain error inquiry. That inquiry, conducted without a thumb on the scales, fortifies the conclusion that the raise-or-waive rule should be allowed to operate. Neither the integrity of the trial process nor the accuracy of the jury verdicts has been impeached. There is simply no reason to believe that the magistrate--a neutral and detached judicial officer, albeit not statutorily authorized to preside--stacked the deck against defendants; that the jury selected was other than impartial and representative; or that the verdicts were influenced by the fact that the district judge did not directly oversee empanelment.
 
 
 39
 In my estimation, these defendants were scrupulously tried and justly convicted. Because the error they belatedly assign was not preserved and cannot be said to have "seriously affect[ed] the fairness, integrity or public reputation" of the trial, Atkinson, 297 U.S. at 160, 56 S.Ct. at 392, their convictions should not be vacated.
 
 
 40
 LEVIN H. CAMPBELL, Circuit Judge, with whom SELYA, Circuit Judge, joins (dissenting).
 
 
 41
 I join completely in Judge Selya's well-reasoned dissent, and write separately only to emphasize further the court's erroneous reliance (as I see it) on the "futility" exception to the raise-or-waive rule. See ante at 1553-55. As Judge Selya asserts, "[e]ven in circuits where courts of appeals had authorized the practice of having magistrates preside at empanelment, no court of appeals had insisted that the practice be followed." Ante at 1560 (Selya, J., dissenting). Thus, defendants would not have been committing a "futile" act had they asked the district court to preside over voir dire. The court might have declined, but, on the other hand, it might not have.
 
 
 42
 To appreciate why the futility exception does not apply, it is useful to look at the reasons for that exception. The futility exception to the raise-or-waive rule originated in United States v. Scott, 425 F.2d 55, 57-58 (9th Cir.1970) (en banc). In Scott, the defendant had failed to except to the district court's instruction that the jury could presume knowledge of a drug's illegal importation from proof of possession. While the case was pending on appeal, the Supreme Court, in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), ruled that this type of instruction was unconstitutional. The Ninth Circuit then faced the question whether the defendant, who had not excepted to the instruction below, could nevertheless rely on the Supreme Court's holding in Leary and contest the instruction on appeal.
 
 
 43
 In holding that defendant could challenge the instruction on appeal, the Ninth Circuit observed that, at the time of his trial, "there was a solid wall of circuit court authority, including [the Ninth Circuit's] own, sustaining the presumption against constitutional attack." Scott, 425 F.2d at 57. Given this "solid wall" of authority, "an exception would not have produced any results in the trial court." Id.
 
 
 44
 Since the holding in Scott, courts have applied the futility exception in cases where a "a wall of binding authority squarely precludes the trial court from correcting an error in light of an objection." People of Territory of Guam v. Yang, 850 F.2d 507, 512 n. 8 (9th Cir.1988) (en banc). See also Martone v. United States, 435 F.2d 609, 610-11 (1st Cir.1970) (district court adhered to "solid wall of circuit authority"); Smith v. Estelle, 602 F.2d 694, 708 n. 19 (5th Cir.1979) (state court followed controlling state law); Robinson v. Heilman, 563 F.2d 1304, 1307 (9th Cir.1977) ("instructions correctly stated the controlling law of the Circuit at the time they were given"); United States v. Grant, 489 F.2d 27, 29 (8th Cir.1973) (noting existence of "recent and unequivocal authority in this circuit denying precisely the instruction sought").
 
 
 45
 A common thread in the above precedents is that binding authority precludes the district court from correcting its erroneous conduct. Two concerns follow from this proposition. First, since correction is precluded, requiring an objection may only create a perverse incentive for defendants to "burden district courts with repeated assaults on then settled principles out of hope that these principles will later be overturned...." Scott, 425 F.2d at 58. See ante at 1554 (not wanting to encourage "obnoxiously belligerent counsel who, in spite of history, or ignorant thereof, object to everything as a matter of principle, or counsel who are unduly concerned with contentious clients"). Second, when a district court is manifestly without power to grant a defendant's request, it is unfair to fault the defendant for failing to make that request. See ante at 1554 (not wanting to fault defendants when "no reasonable hope [existed] that they might persuade the Puerto Rico court to jettison its time-saving rule").
 
 
 46
 Neither of these concerns is present here. First, no reason exists to fear the creation of an incentive for litigants unreasonably to challenge well-settled rules, because defendants here would not have been challenging any well-settled rule had they asked the district court to preside over jury selection. It is clear that, at all relevant times, Puerto Rico judges not only delegated to magistrates the selection of jurors, but also frequently selected jurors themselves.[1] It lay within the judge's discretion to do either. No First Circuit precedent, let alone a "solid wall of binding authority," would have precluded a district court from acquiescing in a request that the court preside instead of a magistrate. Cf., e.g., United States v. Scott, 425 F.2d 55, 57-58 (9th Cir.1970) (en banc) (defendant excused for failing to request jury instruction that would have been contrary to circuit precedent).
 
 
 47
 Second, as the district court was not without power to entertain the request, no unfairness would result from holding defendants responsible for failing to request that the district court supervise jury empanelment. Cf., e.g., id. (district court had no power to ignore controlling circuit precedent in choosing jury instruction).
 
 
 48
 Defendants here would not, moreover, have been acting in an "obnoxiously belligerent" manner even had they demanded (rather than simply requested) that the court preside over jury selection. Judge Selya has already pointed out that this circuit's Rivera-Sola decision was in the nature of dicta: it would not have been "belligerent" for counsel to have pressed for a different outcome, hoping to persuade this court on appeal to reconsider. And this was the kind of policy issue on which the Supreme Court--having yet to speak--remained, realistically, a beacon of hope. It was thus sensible, and not "obnoxiously belligerent", for a defendant to ask the district court to select the jurors itself, and, if the court refused, to lodge a respectful objection. In Gomez, astute counsel did just that--a reasonable, not a futile gesture, since a district judge might well have granted the request either to be accommodating or else to avoid an eventual appeal to the Supreme Court on a still open issue, or even just because the district judge was persuaded by the logic of defendant's argument. There is thus absolutely no unfairness in requiring counsel to have raised the issue; doing so was no mere futility.
 
 
 49
 Indeed, unfairness now works the other way. Defendants are receiving a free ride for a mistake (a) that was never called to the attention of the district judge; (b) that the judge could have avoided had he known defendants objected, and (c) that created no tangible harm to any defendant, i.e., no suggestion is made that the magistrate's empaneling of the jury was marred by some lapse or other blemish that affected the outcome of the trial. As a result of this court's action, there is the likelihood that, if witnesses have disappeared, one or more defendants convicted in a fair trial will walk free. Even if successfully retried, the expense and the burden on scarce judicial resources are considerable. Our position today simply makes no sense when no one has been able to point to anything that, in a real-world sense, made defendants' trials unreliable or unfair.
 
 
 50
 To be sure, this court must, and most assuredly will, uphold the Supreme Court's Gomez rule in all future cases. But broadcast jail deliveries like this are not required in order to uphold the integrity of that ruling. Rather, today's ruling constitutes a pointless spinning of wheels that gives certain defendants[2] an undeserved, arbitrary windfall at the public's and the taxpayer's expense.
 
 
 51
 Accordingly, I respectfully dissent.
 
 
 
 [1]
 Defendants also sought dismissal of the indictment, a matter they still pursue, manifestly erroneously
 
 
 [2]
 Under our practice, the granting of the petition automatically vacated the judgment as to these defendants. United States v. Klubock, 832 F.2d 664 (1st Cir.1987). The other defendants, instead, sought certiorari
 
 
 [3]
 In United States v. France, 886 F.2d 223, 228 (9th Cir.1989), cert. granted, --- U.S. ----, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990) post, the court excused defendant for not objecting because she was faced with a "solid wall."
 
 
 [4]
 "[I]n accordance with the regular practice in the District of Puerto Rico, the district court delegated jury selection to a magistrate."
 
 
 [5]
 As to the certiorari seeking defendants who failed to file a timely petition for rehearing en banc, we reserve acting on their outstanding motion for recall of mandate until after the Supreme Court decides the France case
 
 
 [6]
 Following the Court's lead, we have often indicated that the probability of a changed outcome, or more, is a condition precedent to overlooking the lack of a contemporaneous objection. See, e.g., United States v. Williams, 809 F.2d 75, 82 (1st Cir.1986) (plain error would be one which "virtually ... insure[d]" a different outcome), cert. denied, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987); United States v. West, 723 F.2d 1, 2 n. 1 (1st Cir.1983) (same), cert. denied, 469 U.S. 1188, 105 S.Ct. 956, 83 L.Ed.2d 963 (1985). The requirement may not be inflexible, but it is of general application
 
 
 [7]
 Professor Wright wryly observed that the cases left him with the impression that appellate courts have not put much flesh on plain error's definitional bones, "save that they know it when they see it." 3A C. Wright, Federal Practice and Procedure: Criminal 2d Sec. 586 (1982), at 337
 
 
 [8]
 As to a possible fifth prong, it cannot seriously be contended that the magistrate lacked jurisdiction in the sense that the district court lost, or was deprived of, subject matter jurisdiction, thus eclipsing the raise-or-waive rule. See, e.g., Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); Capron v. Van Noorden, 6 U.S. 126, 127, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The district court possessed subject matter jurisdiction throughout, although the magistrate lacked statutory authority to exercise that jurisdiction. The resultant irregularity was procedural, not jurisdictional. See Archie v. Christian, 808 F.2d 1132, 1134-35 (5th Cir.1987) (en banc)
 
 
 [9]
 We have already ruled that errors infringing on the right to an impartial jury, even if not harmless, need not necessarily be deemed plain. See Acevedo, 842 F.2d at 508 & n. 3
 
 
 [10]
 Defense counsel in Gomez, confronted with a Second Circuit precedent which was a fair congener to Rivera-Sola, United States v. DeFiore, 720 F.2d 757, 764-65 (2d Cir.1983), cert. denied, 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984), saw fit to preserve this very sort of objection
 
 
 [1]
 The majority has sloughed off this dissent by stating simply that "[a]t the time of the panel hearing there was no suggestion in the record, or by counsel, that ... magistrate empaneling was ever departed from...." This overstates matters. At oral argument the government's attorney strenuously asserted that magistrate selection was not a universal practice. He noted that in the two Puerto Rico criminal cases he had handled, the judge had personally conducted voir dire and selected the jury. The attorney further noted that out of all the many pending Puerto Rico criminal appeals only eight raised the present issue. The precatory language of the Puerto Rico local rule, merely authorizing a magistrate--in a lengthy list of other permitted functions--to conduct voir dire and select petit juries, conveys no hint that judges were deprived of this function whenever they chose to perform it. Indeed, the notion that Puerto Rico's seven district judges would have all surrendered their empanelment powers lock, stock and barrel to the district's three magistrates seems so odd that I have difficulty seeing how my colleagues would have believed that to be the case
 
 
 [2]
 If it is argued that, since Gomez was given a new trial, fairness requires a new trial for these defendants as well, the answer, of course, is that Gomez's counsel objected while counsel here did not. My colleagues do not suggest retrying the hundreds, perhaps thousands of convicted persons now serving jail terms following trials before juries selected by magistrates. Limiting new trials to those who, like Gomez, raised objections is just as rational--indeed, I suggest, more rational--than retrying those non-objecting persons (but none others) whose cases were still open when Gomez was decided. This is especially so since federal magistrates today are highly experienced professionals. There is no reason to fear in any of these cases that the magistrate inflicted on a defendant some actual injury that only a new trial can correct. No such contention, indeed, is made. We should not forget that most of the nation's criminal trials, including capital cases, are tried by state judges whose security of tenure is often less than that of Article III judges--and often less than that of a federal magistrate. This does not, of course, lessen the force of the Supreme Court's holding that magistrates may not, from here on, preside over jury selection. Still, it suggests that the pre-Gomez practice of permitting magistrates to preside gives little cause for alarm over the quality of the trial process in the ordinary case